## No. 9542.

### YEAGER MILLING COMPANY vs. HENRY T. LAWLER.

In a contract of sale on terms of credit, breach of the resolutory condition on the part of the buyer does not arise till the term of credit has expired, before which time an action to annul on this ground will not lie.

Fraud, however, when established, vitiates the contract ab initio and is not dependent, for its assertion, upon the expiration of the term of credit.

A representation of solvency on the part of the buyer is ordinarily implied in every application to purchase goods on credit; but it requires a wilfully false statement to that effect, as a *fact* and not as a mere *opinion*, to vitiate the contract; or else it must appear that, at the date of the purchase, the buyer contemplated a swindle and did not intend or expect to pay for the goods.

In this case no fraud is established such as to vitiate the sale, and the action of plaintiff to annul the sale before expiration of the terms of credit and sequestering the goods was premature.

The sequestration having been wrongfully issued, defendant was entitled to actual damages which are assessed according to the peculiar circumstances of the case.

APPEAL from the Civil District Court for the Parish of Orleans. *Tissot*, J.

*Singleton, Browne & Choate* for Plaintiff and Appellee.

*J. O. Nixon, Jr.*, for Defendant and Appellant.

*Henry Denis, A. Pitot* and *Henry C. Miller* for Intervenors and Appellees.

---

The opinion of the Court was delivered by

FENNER, J.  Plaintiff had sold to defendant a large quantity of flour on credit, evidenced by the latter's acceptances, amounting to $11,345, maturing at various dates in May, 1880.

Before the maturity of any of these acceptances, plaintiff, averring that the flour had been obtained by the defendant through fraud and misrepresentation, and that he was then making way with it, with the view of defrauding plaintiff, brought this suit to cancel and annul the sale, and obtained a writ of sequestration, under which 2352 barrels and 1500 sacks of flour were seized herein.

Part of the flour sequestered was in process of loading under shipment to Europe, and the bills of lading, therefore, had been advanced upon by the Citizens' Bank to their value. The remainder had been pledged to the Hope Insurance Company and the Mechanics and Traders' Insurance Company, also to its value.

These parties intervened in the case and bonded the flour on which their claims rested; and their claims were sustained by the final judgment of the Court, of which, in this respect, neither party complains.

Defendant moved to dissolve the sequestration on the ground, amongst others, that the affidavit on which it issued was untrue, and subsequently filed answer denying specifically the truth of plaintiff's allegations, together with a reconventional demand for $35,000 damages. Considerable testimony was taken on the rule to dissolve, but it was finally referred to the merits. Subsequently plaintiff filed a supplemental petition, representing that, in view of the claims of intervenors, it might prove impossible to recover the property sequestered, and praying for personal judgment against defendant for the price of the flour, the sale of which should not be annulled, and the same returned.

The judgment appealed from sustained the claims of the intervenors, quashed and set aside the sequestration, gave judgment against the defendant for the price claimed, and rejected defendant's reconventional demand.

We think the court erred in rejecting the reconventional demand.

There is no room here for the application of the resolutory condition implied in commutative contracts, which only takes effect when either of the parties has failed to " comply with his engagements." C. C. 2046. At the date of the sequestration the term of payment accorded to Lawler under the contract of sale had not expired, and therefore there was no breach of his obligation.

But there exist other causes for the avoidance of contracts, amongst which is fraud, which is defined in our Code to be the " cause of an error bearing on a material part of the contract, created or continued by artifice, with design to obtain some unjust advantages to the one

party, or to cause an inconvenience or loss to the other." C. C. 1847, 1881.

This vice, when established, destroys the contract *ab initio* and is not dependent for its assertion upon the expiration of the term allowed. Brull vs. Peets, 3 La. 282; Parmele vs. McLaughlin, 9 La. 436; St. John vs. Sanderson, 15 La. 365; Galbraith vs. Davis, 3 Ann. 95; Cook vs. West, 3 Rob. 332.

The party alleging fraud carries the burden of proving it. C. C. 1848.

The only fraud alleged in this case is that, before obtaining the credit, defendant falsely and with intent to defraud represented himself to be solvent, knowing that he was not so.

A representation of solvency is ordinarily implied in every application to buy merchandise on terms of credit; but it requires a wilfully false statement to that effect, as a fact, and not as a mere opinion which may be innocently mistaken, to vitiate the contract. Morse vs. Shaw, 124 Mass. 59. Or else, it must appear that, at the date of the purchase, the buyer contemplated a swindle and did not intend or expect to pay for them. Benjamin on Sale, sec. 440, note *(e)* and numerous authorities cited.

The evidence here does not satisfy us that Lawler had, at the time of sale, any fraudulent purpose, or made any such misrepresentation as would invalidate the sale.

The only misrepresentation sought to be proved is that, in February, 1886, he had made certain statements to the manager of plaintiff to the effect "that he had a plantation, a sugar plantation, and his residence in the city, and that he was in a better condition now than he was when we had trusted him for a larger amount in the past; that he had always paid what he owed, and that we were running no risk in selling him anything that he wanted to buy; that he was perfectly able, and that we were dealing with an honest man;  *  *  that there was no risk, as he had given up his expensive store and reduced his expenses in every way, was making money and was able to take care of all his liabilities."

The statement rests on the testimony of a single witness, and is contradicted by Lawler, who gives quite a different account of the interview. Moreover, so far as the statements of fact are concerned, they are substantially true. He did own the plantation and residence; had always met his commercial obligations, and actually continued to do so until after the institution of this very suit; and we believe, honestly considered that he was solvent, and fully intended and expected at the time of those subsequent purchases to pay for the goods.

Nor does the evidence in this record make it clear, by any means, that Lawler was actually insolvent. His use of the flour purchased, in selling, shipping and pledging it, was entirely in accordance with the usages and necessities of trade, for the purpose of carrying on his business, and nothing stamps it with any sinister character. We conclude, therefore, that plaintiff's sequestration was entirely unfounded and unlawful, and that it was properly dissolved. From this it follows, as an indisputable legal sequence, that defendant is entitled to the damage actually occasioned by the seizure. Cretin vs. Levy, 37 Ann. 182; Roos vs. Goldman, 36 Ann. 132; Block vs. Meyers, 35 Ann. 220; Barrimore vs. M. Feely, 32 Ann. 1182.

We are not, however, disposed to attach weight to the exaggerated estimate of injury set forth by defendant.

We are quite convinced that, without indulgence from plaintiff and other creditors, defendant's commercial failure was inevitable, and that the loss of business and injury to his credit must have resulted in any event. Other claims of damage come, with bad grace, from a debtor, who, after purchasing the goods of plaintiff on credit, and having availed himself of their full value, has failed to pay for them. It was his duty, however, to himself and to those from whom he had obtained advances on the goods, to contest and set aside the sequestration, and for his counsel fees and expenses in this behalf, as distinguished from the general defense of the suit itself, he is entitled to be recouped. We will fix the amount at five hundred dollars for which he should have had judgment on his reconventional demand.

It is, therefore, ordered, adjudged and decreed that the judgment appealed from be amended by reversing that part thereof which rejects the reconventional demand, and by giving judgment thereon in favor of defendant and against the plaintiff for the sum of five hundred dollars, with legal interest from the date of judgment in the lower court; and that, in other respects, the same be affirmed, plaintiff to pay costs of this appeal.