14 So.2d 452

STATE ex rel. WOODARD et al. v. OZLEY, President of Police Jury, et al. (POLICE JURY OF BIENVILLE PARISH, Intervenor).

No. 36955.

May 17, 1943.

Rehearing Denied June 21, 1943.

Barksdale & Barksdale, of Ruston, for appellants.

Ben F. Roberts, of Shreveport, Robert H. Wimberly, of Arcadia, and Wm. F. M. Meadors, of Homer, for appellees.

Eugene Stanley, Atty. Gen., and W. D. Goff, Asst. Atty. Gen., amicus curiae.

FOURNET, Justice.

The relators, M. E. Woodard, Lorris M. Wimberly, J. Rush Wimberly Sr., J. Rush Wimberly, Jr., R. L. Williams, and B. F. Durrett, the alleged holders and owners in due course for value before maturity of certain designated and enumerated certificates of indebtedness issued by the Police Jury of Bienville Parish in accordance with its ordinance adopted on May 2, 1938, instituted this mandamus proceeding to compel L. E. Ozley, its president, and W. King Murphy, its secretary-treasurer, to pay the interest due on these certificates, alleging that such interest had been paid as provided in the certificates from their issuance up to and including December 6, 1939, but not subsequent thereto, despite the fact the ½ of 1 mill of the 4-mill alimony levied and collected by the Police Jury for that purpose is on deposit with its fiscal agent in a separate account, under the terms of the ordinance, for the payment of the interest on these certificates and their retirement when due. In a supplemental petition, they also asked that the certificates that had matured after this proceeding was instituted be ordered paid.

The respondents denied the relators were holders of these certificates in due course, admitting all of the other allegations of the petition, such denial being predicated on the contention that these certificates were issued by the Police Jury and acquired by the relators in collusion with the secretary-treasurer of the Police Jury, which rendered all of the proceedings of the Police Jury null and void. The Police Jury of Bienville Parish intervened, adopting, in effect, the allegations of the respondents.

The relators then pleaded as an estoppel the acquiescence of the Police Jury and its

officials in the validity of the certificates by the regular payment of all of the interest due thereon up to and including December 6, 1939, seeking, also, by this motion, to have the allegations in the answer of the respondents and intervenor questioning the validity of these certificates stricken from the record. When this motion was overruled, the relators filed another plea wherein they alleged that since the certificates had been issued more than four years prior thereto, in pursuance with the provisions of Act No. 87 of 1928, as amended, the respondents were estopped from questioning the validity of the certificates under the express provisions of one of the amending acts (Act No. 347 of 1938) limiting the period for such contest to 30 days after the promulgation of the resolution issuing the certificates, which prescription was specially pleaded, the relators also re-urging their motion to strike from the answer and the intervention all of those allegations contesting the validity of the certificates. This motion was likewise overruled and the relators then filed a third motion, pleading the judgment rendered by the Second Judicial District Court for the Parish of Bienville (the same court in which the present suit was instituted) on March 4, 1938, in the case of J. D. Adams Company v. Parish of Bienville Police Jury, as res judicata and an estoppel against any attack thereon by the respondents and the intervenor, again reiterating the motion to strike made a part of the first two motions. This last motion was maintained. The respondents and the intervenor filed a motion for a rehearing, averring that the judgment of March 4, 1938, was not a final judgment,

for an appeal had been taken therefrom by certain taxpayers of the parish and was still pending at the time this suit was instituted. This motion was denied.

On the trial of the merits, the judge rendered judgment in favor of the relators, making the alternative writ of mandamus peremptory and ordering the respondents and the intervenor to pay the accrued interest due on the certificates of indebtedness and the principal on those certificates maturing subsequent to the filing of the suit. From this judgment the respondents and the intervenor have appealed.

It appears that the J. D. Adams Company, from whom the Police Jury of Bienville Parish had intermittently purchased road material and machinery, taking advantage of the soil conservation program inaugurated by the Federal government in cooperation with the Extension Department of the Louisiana State University and Agricultural and Mechanical College, undertook to sell the Police Jury and its members on the idea of purchasing machinery that could, in addition to being used in working the parish roads, be leased to farmers for the terracing of their farms, the Police Jury applying the revenues derived from this source toward the liquidation of the amount expended in purchasing such machinery. The company was supported in this venture by the local county agent. To this end demonstrations were made in the various wards of the parish before the farmers and the local Police Jury members, resulting in the unanimous approval of the project by the farmers and the Police Jury and the purchase, by the individual members of the Police Jury, of

this new machinery under a resolution adopted on October 14, 1935, the old machinery being used as the down payment. The new machinery consisted of a number of tractors, terracers, and graders, and the individual Police Jury members in the various wards signed the sales contracts as evidence of the debt, notes therefor being subsequently signed by the president under authorization of a resolution of the Police Jury. The revenue derived from this terracing program was insufficient to meet the payments on the machinery as they became due and take care of all necessary expenses as well, due principally to the fact that the terracing program, because of the inability of the farmers to meet leasing payments, began to "peter out." After numerous fruitless efforts had been made to secure payment from the Police Jury, the J. D. Adams Company, through its agent Thomas F. McNutt, who was delivering a tractor to J. Rush Wimberly, Jr., a contractor and one of the relators here, entered into an agreement on December 17, 1937, under which Wimberly was made the agent of the Adams Company for the purpose of collecting all of the money then due the company by the Police Jury. This included, in addition to the price of the machinery purchased in connection with the terracing program, various other claims incurred prior thereto, aggregating in all $34,519.97, plus interest. According to the testimony in the record, Wimberly agreed to collect, at his own expense, the amount claimed, with the understanding the company would receive 50% thereof in cash, Wimberly thereby acquiring the entire issue of the certificates of indebtedness.

Carrying out his part of the agreement, Wimberly employed counsel to institute suit against the Police Jury in the name of the J. D. Adams Company (No. 11551 on the docket of the Second Judicial District Court for the Parish of Bienville) to recover the $34,519.97, plus interest, due the company and obtained a judgment by default thereunder, the district attorney refraining from answering the suit when he was apprised that the Police Jury, considering the debt an honest one, wanted to pay it. Annexed to this petition was the resolution whereunder the State Bond and Tax Board's approval of this indebtedness—incurred in good faith by the members of the Police Jury who purchased the equipment used in connection with the terracing program unaware of the provisions of Act No. 6 of the Second Extra Session of 1935 requiring that such approval be secured prior to the creation of any indebtedness—was sought by the Police Jury, as well as the approval thereof given by the board.

The default judgment in favor of the Adams Company was rendered on March 4, 1938, and the Police Jury did not appeal therefrom, but, on September 9 following, Langdon T. Frey, Sidney J. Burkhalter, Rufus Lacy, Edwin Winlock, Winlock Gin Company, and Winlock Ice Company, alleging they were taxpayers and residents of the parish and as such parties in interest within the meaning and contemplation of Article 571 of the Code of Practice since the judgment required the levying of a tax against the taxpayers of the parish to satisfy the same, appealed devolutively. Almost immediately

thereafter, the Adams Company, through the attorneys employed by Wimberly, authorized the clerk of court, also ex-officio recorder of the parish, to cancel and erase the said judgment in so far as it required the levy of an ad valorem tax on all of the property and assessments of the parish to satisfy the same. The appeal, however, was perfected and is now lodged in this court.

In the meanwhile, the Police Jury, under its duly published ordinance of May 2, 1938, issued certificates of indebtedness amounting to $40,000 (80 of the par value of $500) in accordance with the provisions of Act No. 87 of 1928, as amended, said certificates being dated June 6, 1938, and conditioned to bear 5% per annum interest, payable semi-annually, on June 6 and December 6. After the Attorney General, on September 14, 1938, and the local district attorney, on September 21, 1938, had stated in writing their opinion that the certificates so issued were legal and binding, they were delivered to and accepted by McNutt on October 27, 1938, in satisfaction of J. C. Adams Company's claim against the Police Jury which had been reduced to judgment. McNutt, in turn, transferred the certificates to Wimberly for and in consideration of the sum of $20,000 in cash, Wimberly thereafter distributing most of them among the persons from whom he had secured the funds to effect their purchase, the attorneys employed to handle the transaction being given two each in payment of their services.

The contentions on which the respondents and the intervenor predicate their resistance to the claim of the relators have been summarized in the concluding paragraph of the brief of their counsel as follows:

"The certificate of the State Bond & Tax Board was null and void on its face, because it purported to authorize payment of a debt created in connection with soil conservation and terracing program, not a public purpose for which Police Juries are authorized to spend taxpayers money; the judgment against the Police Jury for $34,519.97 was null and void for the same reason, that it was for a debt created in connection with soil conservation and terracing program,— and for a 'debt not lawfully incurred prior to July 1, 1936,' and because it exceeded the power of the Court in ordering the Police Jury to levy an ad valorem tax above and beyond the limit of taxes which police juries are authorized to levy under the Constitution of 1921; the Ordinance purporting to authorize the issuance of the certificates was null and void because it authorized and provided for payment of a debt not 'lawfully incurred' as required by the statute, and because the certificates constituted a dedication of revenue which separately or together with other dedications already made by law exceeded the estimated revenue of the Parish for the year 1938 and for each of the twenty years ahead; the issuance and delivery of said certificates to the Wimberlys was null and void because obtained through collusion with the Secretary-Treasurer of the Police Jury, who provided the Wimberlys, simultaneously, with $3,500 out of the taxes of 1938 to help them raise the purchase price which they were to pay The Adams Company for said certificates."

It is well settled in our basic law, as well as our jurisprudence, that he who alleges fraud must prove it. Article 1848 of the Revised Civil Code; Fort & Wife v. Metayer, 10 Mart., O.S., 436; Delee v. Watkins, 2 La. 306; Yeager Milling Co. v. Lawler; 39 La. Ann. 572, 2 So. 398; Mendelsohn v. Armstrong, 52 La. Ann. 1300, 27 So. 735; Valesi v. Mutual Life Ins. Co. of New York, 151 La. 405, 91 So. 818; Strauss v. Insurance Co. of North America, 157 La. 661, 102 So. 861; Garnier v. Ætna Insurance Co. of Hartford Conn., 181 La. 426, 159 So. 705; and Keller v. Summers, 192 La. 103, 187 So. 69. The facts from which an inference or presumption is drawn must not only be established in evidence, but the inference or presumption to which the proven facts give rise must be strong and almost inevitable. Adams v. Liverpool & London & Globe Ins. Co., 5 Orleans App. 301, quoted with approval by this court in the case of Di Martino v. Continental Ins. Co. of New York, 187 La. 855, 175 So. 598.

By agreement of counsel, this case, because of the absence or death of a number of the witnesses, was tried mainly on the evidence adduced during the trial of the mail fraud case of the United States of America v. J. Rush Wimberly, Sr., et al.,[1] No. 9380 of the Criminal Docket of the United States District Court for the Western District of Louisiana. A careful study of the evidence in that case convinces us—as it did the United States District Judge who, after hearing the same, directed the jury to bring in a verdict of not guilty of the mail fraud charge arising out of this same transaction—that the respondents and the intervenor have failed utterly to make out their case of fraud against the relators. The other evidence in the record only serves to strengthen this conclusion.

The record shows that the Police Jury of Bienville Parish purchased this road machinery in connection with the soil conservation program then in effect and in pursuance to the resolution of the Police Jury adopted on October 14, 1935, the pertinent portion of which reads as follows:

"Be it resolved, by the Police Jury of Bienville Parish in extra session convened, that *the members of the various wards be and they are hereby authorized to purchase tractors and road machines for the maintenance of roads throughout the parish.*

"Be it further resolved that any purchases made in and for the various wards will be paid for from the funds belonging to its respective wards and said invoices shall be made for said wards and road districts." (Italics ours.)

The road machinery so purchased was leased out in connection with the terracing program of the Federal government when not being used for road work, with the advice and approval of the Hon. Moreland Meadors, the then district attorney and legal adviser of the Police Jury. The evidence is conclusive that this machinery has been used for road work constantly since its purchase, only being leased for terracing at short intervals during the brief existence of the program, that is, after the harvesting of the crops in the late fall, and in the early spring, before the planting. Furthermore,

---

[1] No opinion for publication.

it was shown that with the exception of the so-called terracer, costing only about 1/16th of the total amount expended on the machinery, all of the equipment purchased was road machinery, the terracer itself being susceptible of and actually used for road work, the only difference between it and a road grader being that the terracer has two wheels while the other has four.

The record further shows that neither Wimberly nor any of the other relators in this case had anything to do with the incurrence of this debt and that until the claim for the machinery was placed in Wimberly's hands for collection by McNutt in the latter part of 1937, over two years after it was incurred, they had no connection whatsoever with the transaction.

In support of their allegations of fraud and collusion, counsel for respondents and the intervenor rely principally, if not entirely, upon the fact that young Wimberly, before entering into the agreement relative to the collection of the Adams company claim, discussed the matter with his father, then the district judge, in an effort to ascertain whether the claim was collectible, as well as upon the fact that a part of the $20,000 paid McNutt by Wimberly consisted of a check of the Police Jury in the sum of $3,500.

We do not understand upon what theory the other relators in this case were made parties to this alleged scheme to defraud unless it be that the respondents and intervenor infer such from the mere fact that some of these certificates were in their possession. They were purchased for value before maturity. The evidence shows that more than half of the total purchase price paid the Adams company for this issue was derived from the money these people paid for their certificates, such purchase being made only after young Wimberly's effort to negotiate the sale of the entire issue through the facilities of the local bank (although it later loaned him 50% of the face value of the certificates owned by him) had failed.

■ The mere fact that Wimberly sought his father's advice before undertaking the responsibility of collecting this claim does not in itself constitute fraud or collusion. It appears to us that this was very natural, particularly in view of the fact that the younger Wimberly, who was not an attorney, was very close to his father in a business way, being partners in the construction business and having adjoining offices. Besides, it does not appear that Judge Wimberly profited in this transaction in any other manner than through his interest in the construction company, which company acquired some of the certificates, the profit derived from this transaction, that is, the certificates that were not sold for the purpose of raising the money with which they were purchased from the Adams Company, amounting to approximately $11,000, going to young Wimberly.

Nor do we see what comfort counsel derive from the fact that a part of the funds with which the certificates were purchased from McNutt consisted of the check of the Police Jury in the amount of $3,500 when the record shows that this check was given for the purpose of retiring seven of the certificates in accordance with an ordinance of the Police Jury.

Aside from the intimations and speculations to be found in the answer and brief of the respondents, adopted by the intervenor, the record is barren of any evidence that supports the charge that these certificates were issued and acquired through collusion and fraud.

After Wimberly contracted with the Adams company to collect this claim from the Police Jury, he placed the entire matter in the hands of his attorneys, who handled it from that moment until the certificates as issued were delivered to Judge Wimberly in his son's absence. All of the members of the Police Jury as it was then constituted, many of whom are still members, testified they were not induced, coerced, or otherwise influenced by any of the relators or by anyone in their behalf with reference to the issuance of these certificates, their only motive in effecting such issuance being to pay a bona fide and honest debt. In addition, these certificates were issued by and with the approval of the State Bond and Tax Board in accordance with all of the formalities required by Act No. 87 of 1928, as amended, such issue being approved by the Hon. T. Kinnabrew, the then attorney of the district and legal adviser of the Police Jury, as well as by the Hon. Gaston L. Porterie, then the Attorney General of the state and now the Federal judge for the Western District of the State of Louisiana, both of whom gave their reasons for such approval in writing. Kinnabrew rendered his opinion both at the time these certificates were issued and again when this proceeding was instituted. The opinion of the then Attorney General rendered on September 14, 1938, addressed to the Bienville Parish Police Jury is as follows:

"I have examined the proceedings of your police jury leading up to the issuance of the certificates of indebtedness. I find the resolution of the police jury requesting the State Bond and Tax Board to approve same; I find the correct approval of the State Bond and Tax Board of said indebtedness; I find that you passed the proper resolution authorizing the issuance of said certificates of indebtedness, and, in my opinion, the certificates issued under said resolutions are regular and binding obligations of the Parish of Bienville."

The mere fact that the State Bond and Tax Board in approving these certificates of indebtedness referred to the same as having been incurred "in connection with Soil Conservation and Terracing program," and that the resolution of the Police Jury requesting such approval also included a similar statement, does not, in our opinion, have the effect of nullifying such authorization or of changing the fact that the equipment purchased was road machinery and used as such by the Police Jury. Nor did the fact that this machinery was used in connection with the terracing program of the Federal government have the effect of vitiating the legality of the debt thus lawfully incurred.

It is our opinion, therefore, that these certificates are legal and binding negotiable instruments, having been issued by the Police Jury of Bienville Parish in conformity with and under the requirements of Act No. 87 of 1928, as amended, for a debt lawfully

incurred prior to July 1, 1936, in the acquisition of road machinery used in connection with one of the Police Jury's main functions—the maintenance and upkeep of the roads of the parish and the drainage thereof—under its proper resolution, and that the relators, having acquired these certificates in good faith, for value, and before maturity, are entitled to have the accrued interest thereon and the principal thereof as they mature paid out of the money dedicated and pleged by the Police Jury in the resolution authorizing the issuance and set aside for that purpose in a special account in pursuance therewith.

The object of Act No. 87 of 1928, as amended by Act No. 207 of 1936, under which these certificates were issued, was, as expressed in its title, to authorize the parishes "to issue negotiable, interest bearing certificates of indebtedness" for the payment of any indebtedness "matured or unmatured," exclusive of the bonded indebtedness, lawfully incurred prior to July 1, 1936, and to that end authorized them "to dedicate, appropriate and pledge not more than two (2) mills of the taxes respectively authorized to such police juries * * * by the Constitution and laws of the State of Louisiana, for a period not exceeding twenty-five (25) years." In order to give security to the holders of such certificates the legislature adopted its Act No. 347 of 1938, again amending and re-enacting Act No. 87 of 1928, by providing for a period of 30 days from the promulgation of any resolution of the Police Jury issuing certificates within which any interested party could "contest the correctness, the validity

and legality of the debts for which such certificates of indebtedness are issued, the issuance of said certificates of indebtedness and/or the sale thereof, the validity of said certificates and the security pledged for the payment thereof, *after which said period of thirty (30) days no one shall have the right to enter a contest for any cause whatsoever.*" (Italics ours.)

For the reasons assigned, the judgment appealed from is affirmed.

ODOM, J., dissents and hands down reasons.

O'NEILL, C. J., concurs in the decree.

ODOM, Justice (dissenting).

I dissent from the majority ruling for the reason that it is clear to me that the certificates of indebtedness involved in this case are null, void, and of no effect, and neither this nor any other court has jurisdiction to enforce their payment, for three reasons: First, that the issuance of the certificates by the Police Jury was not authorized by the State Bond and Tax Board, as created by Act No. 6, Second Extra Session of 1935; second, that the debt, for the payment of which the certificates were issued, was one which the Police Jury was not authorized under the law to incur, and that, even if it be conceded that the Police Jury was authorized to incur such debt, the Police Jury made no provision for the payment of the debt at the time it was created, as required by Section 2448 of the Revised Statutes; and third, that the debt was incurred without the authorization and approval of the

State Bond and Tax Board, as required by Act No. 6, Second Extra Session of 1935.

Section 2448 of the Revised Statutes and Act No. 6, Second Extra Session of 1935, express the public policy of the State with reference to the creation of debts and the issuance of certificates of indebtedness by police juries, municipalities, and other political subdivisions of the State. For this reason the Police Jury is not estopped by its conduct or by laches to deny the validity of the debt or the certificates, because the generally accepted rule is that "The doctrine of estoppel by conduct or by laches has no application to an agreement or instrument which is illegal because it violates an express mandate of public policy. Neither action nor inaction of a party to such an agreement can validate it; and no conduct of a party to it can be invoked as an estoppel against asserting its invalidity." 12 Am.Jur. p. 740, § 222.

"An agreement void as against public policy or because prohibited by law cannot be rendered valid by invoking the doctrine of estoppel." 17 C.J.S., Contracts, § 279, p. 669.

See, also, Phillips v. Bryan, 172 La. 269, 134 So. 88; Rhodes v. Miller, 189 La. 288, 179 So. 430.

Section 2448 of the Revised Statutes reads as follows:

"The police juries of the several parishes, and the constituted authorities of incorporated towns and cities in this State, shall not hereafter have power to contract any debt or pecuniary liability, without fully providing in the ordinance creating the debt, the means of paying the principal and interest of the debt so contracted."

There was no resolution of the Police Jury authorizing the creation of the debt for which these certificates were issued, and no provision made for its payment, until an ordinance was adopted authorizing the issuance of the certificates on July 14, 1938, more than two years after the alleged debt was incurred.

Act No. 6, Second Extra Session of 1935, is an act, according to its title, "To protect the faith and credit of the State of Louisiana, its parishes, municipalities, public boards and political or public corporations."

Section 10 of the act declares:

"That the Legislature declares it enacts this law for the preservation of government, for the public good and the general welfare and to curtail the growing dissent and dissatisfaction of the property taxpayers, the citizens, and the electors of the State, due to excessive special taxes and the incurring of burdensome and excessive indebtedness by the governmental agencies of the State, and to provide against losses of tax revenues, through adjudications at tax sales, by the State and its agencies."

Section 2 of the act declares:

"That hereafter no parish, municipality, public board, political or public corporation, * * * shall have authority to borrow money, incur debt, *or to issue bonds, or other evidences of debt*, * * * without the consent and approval of the State Bond and Tax Board, created by Section 3 of this Act." (All italics in this opinion are mine.)

Section 5 declares:

"That hereafter, before incurring any debt, * * * *issuing any bonds or other evidences whatever of debt,* * * * every such governmental agency of the State of Louisiana named in Section 2 of this Act shall obtain the consent and approval of the State Bond and Tax Board."

Section 7 of the act provides that:

"The provisions of this act shall extend and apply to any debt incurred or bond or other evidence of debt issued by any such governmental agency named in Section 2 of this Act, whether the same has been authorized by an election of the property taxpayers who are qualified electors, whether the same is being incurred or issued without an election, or by agreement with the lender, that no election shall be. required, or whether the same is otherwise incurred or issued under any provision of the Constitution or laws of this State, including any and all charters of municipalities."

This section clearly prohibits the incurring of any debt or the issuing of certificates for the payment thereof, in violation of the provisions of the act, by any parish or other political subdivision of the State even though authorized by an election of the property taxpayers or if the same is otherwise incurred or issued under any provision of the Constitution or laws of the State.

There is no evidence in the record to show, and I do not understand that it is contended by plaintiffs, that the State Bond and Tax Board ever formally authorized the issuance of these certificates, and it is certain that the Bond and Tax Board did not approve the debt until after it was created.

According to Section 8, Act No. 6 of the Second Extra Session of 1935, the obligations evidenced by these certificates are utterly null and void. That section reads as follows:

"Any contract, debt, obligation, bond, or other evidence of indebtedness whatsoever, incurred or issued in violation of this act, and without the consent and approval of the State Bond and Tax Board, shall be null and void, and no court of this State shall have jurisdiction to enforce the payment thereof, or of any suit or other proceeding affecting or involving the same."

Now, as relates to the debt for the payment·of which these certificates were issued, the record establishes beyond question, in my opinion, that it was one which the Police Jury had no power or authority to incur. The Police Jury did, on October 14, 1935, by resolution authorize the members of the various wards of the parish "to purchase tractors and road machines for the maintenance of roads throughout the parish". One section of that resolution reads as follows:

"Be it further resolved that any purchases made in and for the various wards will be paid for from the funds belonging to its respective wards and said invoices shall be made for said wards and road districts."

The police jury of each of the various parishes of the State is authorized to maintain its roads and bridges, and by proper

proceedings may authorize the incurring of debt for that purpose.

But this resolution relates exclusively to the purchase of "tractors and road machines for the maintenance of roads throughout the parish".

The record clearly shows, I think, that this debt was incurred, not for the purpose of maintaining the roads of the parish, but for the purchasing of machinery to be used in connection with a terracing program, and the members of the Police Jury were advised by the district attorney that it had no authority to incur debt for that purpose.

It is true that some of the members of the Police Jury testified that, according to their understanding, the machinery was purchased for use in connection with the terracing program and for the construction and maintenance of roads. Other members of the Police Jury testified that, while the machinery purchased could be used for either purpose, it was their understanding that it was intended to be used to carry out the terracing program sponsored by the Federal government, and that it was to be leased to the landowners for that purpose, the landowners to pay so much per tractor hour for its use, and that the machinery was to be paid for out of these rentals.

But the question as to the purpose for which the machinery was purchased is, regardless of the testimony, foreclosed by the resolution adopted by the Police Jury on January 3, 1938, before these certificates were issued and after the debt was incurred. That resolution recites that, whereas the Police Jury is indebted unto J. D. Adams Company in the sum of $38,183.33, and

"Whereas, said indebtedness was created in connection with Soil Conservation, and specially terracing program, and that

"Whereas, said machinery was bought in good faith, and for the purpose of carrying out Soil Conservation as suggested by the Federal Government, and that

"Whereas, the Police Jury of Bienville Parish was unaware of the statute that requires that all indebtedness, before created, shall be approved by the State Bond and Tax Board, and that

"Whereas, said indebtedness having been contracted and value received therefor in good faith, and

"Whereas, said indebtedness can not be paid for now without the approval of the State Bond and Tax Board."

That resolution was sent to the office of the State Bond and Tax Board at Baton Rouge, and on January 14, 1938, the secretary of the Bond and Tax Board wrote to the secretary of the Police Jury of Bienville Parish as follows:

"Application of the Bienville Parish police jury dated January 5, 1938, submitted to the State Bond and Tax Board for permission to pay indebtedness in the amount of $38,183.33 created in connection with Soil Conservation and Terracing Program, in accordance with resolution adopted by said police Jury January 5, 1938, was approved by the members of the State Bond and Tax Board, in accordance with Act No. 6 of the Second Extraordinary Session of the Legislature of 1935, at a special meeting of the Board held January 13, 1938."

The approval of the State Bond and Tax Board shows that the indebtedness was contracted in connection with the terracing program.

The approval of the State Bond and Tax Board of an invalid debt did not and could not have the effect of making that debt legal. Besides, this approval was obtained, not before the debt was contracted, but long thereafter.

The method resorted to for the payment of this debt clearly circumvented the laws of this State enacted to protect the faith and credit, not only of the State, but of its political subdivisions as well, and thwarted the very .purpose of the laws declaring its public policy in connection with matters of this kind.

The majority opinion contains this statement: "In addition, these certificates were issued by and with the approval of the State Bond and Tax Board ·in accordance with all of the formalities required by Act No. 87 of 1928, as amended * * *."

This statement is based entirely upon the theory that the resolution of the Police Jury dated January 3, 1938, which we have quoted above, wherein it petitioned the Bond and Tax Board to· approve the debt, should be construed as a request for the approval of the certificates, and that the approval of the debt by the Bond and Tax Board should be construed as an authorization to issue them.

This resolution was adopted, and the approval of the debt was made, more than four months prior to the date of the Police Jury's ordinance authorizing the issuance of the certificates. Furthermore, nothing what-

ever is said about the issuance of certificates in the ordinance asking for the approval of the debt or in the order approving it. My opinion is that the ordinance and the approval of the debt cannot reasonably be construed to mean what the majority seem to think they mean. Act No. 6 of the Second Extra Session of 1935 requires that such evidences of debt must be formally approved by the State Bond and Tax Board prior to their issuance; otherwise they are null and void, and no court has jurisdiction to enforce their payment.

I respectfully dissent from the majority ruling.