HAWTHORNE, Justice.
 

 Claude Elmo Jones died at his domicile in Caddo Parish, Louisiana, on May 11, 1954, leaving an estate worth over $91,000. The district court dismissed a petition for probate of a purported will of Jones dated June 20, 1951, written in olographic form. The proponents of the will have appealed.
 

 The olographic will which proponents seek to have probated is a carbon impression — that is, the writing, including date and signature, was produced by the use of carbon. This document was proved to have been entirely written, dated, and signed in the handwriting of the deceased, and both the proponents
 
 [1]
 
 and the opponents
 
 [2]
 
 of the will so stipulated. Hence no question is presented here of the validity of the form of the will.
 

 The known facts regarding the writing and execution of this will are extremely meager. The will was written by the testator at the home of Miss Kathryn
 
 *119
 
 Konechney, who later became his second wife, and in her presence. After Mr. Jones completed the document, he asked Miss Konechney whether she wanted to read his will, and she said she did not. While testifying she was asked whether the deceased “wrote an original and several copies of this will”, and she said she did not know. She also testified that he told her he was going to mail the documents.
 

 After the death of Mr. Jones two identical carbon impressions of this will came to light. One was found in his desk in an envelope addressed to himself at his home. The other was in the possession of his sister, Mrs. Lucille Waters, in a sealed envelope addressed to the deceased at his home and postmarked Sheveport, June 21, 1951.
 
 [3]
 

 The documents offered for probate are identical in every respect, and each consists of two pages of written material. On each document the signature of the testator was written with the aid of carbon, but he also put his signature in ink at the top and the bottom of each page of both documents.
 

 This is clearly a case where the testator executed his will in multiple originals, and each original is of equal dignity and force with any other.
 

 Because no first impression of the will can be found, opponents argue that there has been a tacit revocation. See art. 1691, La.Civ.Code. The trial judge so held, relying on a principle of law announced by this court in Succession of Nunley, 224 La. 251, 69 So.2d 33, 35. In that case it was said:
 

 “The fact that an olographic will, shown to have been in the possession of or accessible to the deceased, cannot be found at his death, gives rise to a legal presumption of revocation by destruction; however, this presumption is a rebuttable one, according to the accepted principles adhered to not only in this State and in France, but under the common law as well. See Fuentes v. Gaines, 25 La.Ann. 85; cf. Succession of O’Brien, 168 La. 303, 121 So. 874; Ripert et Boulanger’s Traité élémentaire de droit civil de Planiol, op.cit. supra, III, Nos 2087, 2088, p. 665; annotation in 34 A.L.R. at page 1304 et seq.; 3 A.L.R.2d 949, at page 952 et seq. * * * ”
 

 As we have said, the will in question — for there is only one will although duplicate originals of it exist — was entirely written, dated, and signed by the testator, and is valid in form as an olographic will. Since it has been proven to have been validly executed, the burden of proving
 
 *121
 
 revocation rests upon the opponents who assert revocation. See Throckmorton v. Holt, 180 U.S. 552, 21 S.Ct. 474, 45 L.Ed. 663; Annotation, 165 A.L.R. 1188; 57 Am. Jur. 374, Wills, Sec. 541.
 

 Opponents, relying on the Nunley case, supra, contend that they have discharged this burden because there is a presumption of revocation, and that this presumption has not been overcome by the proponents of the will. In the Nunley case it was stated:
 

 “ * * * The onus of rebutting this presumption is cast upon those seeking to establish the will, by clear proof (1) that the testator made a valid will, (2) proof of the contents or substance of the will, and (3) of the fact that the will, though it could not be found at the testator’s death after diligent search, was never revoked by him.”
 

 The trial judge in this case, who refused to admit the will to probate, stated that it appeared that no one except the testator ever had possession of the original instrument from the date of its confection to the time of the testator’s death three years later. He then concluded that since this instrument cannot be found, the presumption is that it was revoked by destruction.
 

 Article 2284 of our Civil Code defines presumptions as “consequences which the law or the judge draws from a known fact to a fact unknown”. See also art. 2288, La.Civ.Code. Moreover, in State ex rel. Woodard v. Ozley, 203 La. 579, 14 So.2d 452, 455, this court said:
 

 “The facts from which an inference or presumption is drawn must not only be established in evidence, but the inference or presumption to which the proven facts give rise must be strong and almost inevitable.”
 

 Opponents stress the fact that proponents allege in their petition that there was a first impression of this testament which was lost, misplaced, or inadvertently destroyed. For opponents’ benefit, let us assume that there did exist a first impression of this will. This is a reasonable assumption since the testator used carbon in making the two impressions of the will which do exist. If this assumption is accepted as a fact, then the first impression of the will was not shown to have left the possession of the testator, and he had in his possession two duplicate originals of his olographic will which were of equal rank and dignity, both valid in form. One of these was found among his effects after his death, but the other had disappeared.
 

 This case then presents the question of whether the presumption of destruction with intent to revoke would arise when a testator who has executed his will in multiple originals had two originals in his pos
 
 *123
 
 session, but only one is found after his death.
 

 Our research does not reveal any case in Louisiana on this particular point. The courts of other jurisdictions, however, have considered the question of whether a will should be probated where it has been executed in duplicate and the testator has retained both copies, but where one copy cannot be found after his death.
 

 In Pemberton v. Pemberton, 13 Ves.Jun. 291, 33 Eng.Rep. 303 (1807), the testator had possession of duplicate wills at his death, one of which had been altered and cancelled rather than lost. The court held in that case that the uncancelled copy could be probated on the theory that although the presumption of revocation by destruction was applicable to such a case, it was at the most a very weak presumption and was overcome by the preservation of the duplicate copy.
 

 The courts of New York have considered the question several times. In the case of In re Shields, 1921, 117 Misc. 96, 190 N.Y.S. 562, wherein one of the two duplicate copies in the possession of the testator could not be found, the court admitted the remaining copy to probate, reasoning that although the presumption did apply, it was at the most a weak one and was overcome by the preservation of the duplicate copy. In Blackstone’s Estate, 1939, 172 Misc. 479, 15 N.Y.S.2d 597, the court refused to follow the Shields case; but in the later case of Matter of Mittelstaedt’s Will, 1952, 280 App.Div. 163, 112 N.Y.S.2d 166, the court followed the Shields case, holding that the presumption of revocation by destruction was rebuttable by a single fact, the testatrix’ possession of one copy at her death.
 

 In the instant case, therefore, we conclude that the presumption would be at the most a weak one and would be overcome by the fact that the testator had preserved one of the duplicate originals of his will in his possession. If in fact he had possession of two identical copies of his will, the presumption of revocation arising from the disappearance of one is overcome by the preservation of the other.
 

 For the reasons assigned the judgment of the district court denying probate is annulled, reversed, and set aside, and the case is remanded to the lower court for further proceedings consistent with the views here expressed. Appellees are to pay all costs.
 

 [1]
 

 . The proponents of the will, plaintiffs, are George W. Jones, Mrs. S. A. Rhoades, Clarence E. Jones, Norman Oliver, and Mrs. Lucille Waters.
 

 [2]
 

 . The opponents are W. S. Mason, Mrs. Kathryn Konechney Jones, and Mrs. Katherine Mason.
 

 [3]
 

 . Mr. Jones had given Mrs. Waters this envelope with instructions to keep it and open it only if something should happen to him. Mrs. Waters testified that she thought the envelope contained instructions regarding her brother’s funeral; that she opened it only after she was notified of his death, and found that it contained one of the duplicate carbon impressions of this will.