**In the Matter of the ESTATE of Glenn C. SHAW, Deceased.**

**No. 48716.**

Supreme Court of Oklahoma.

Dec. 6, 1977.

**230**

Doyle Watson, Watson & Watson, Drumright, for appellees-proponents.

Mary R. Bailey, Fairview, Robert D. McPherson, Pampa, Tex., Jesse D. Swift, Sand Springs, for appellants-contestants.

DOOLIN, Justice:

We granted certiorari in this matter in response to an application under Rule 3.14 A(1), 12 Ch. 15 App. 3.[1] We are called upon to decide and rule that a presumption of revocation of a will arises from failure to account for or to produce all copies of executed duplicate wills.

The facts reveal decedent, Shaw, went to his family lawyer for the purpose of making a will. In due time a will was prepared and executed in duplicate. At the time of execution the lawyer explained the purpose of duplicate wills was, in the event either was misplaced, lost or accidentally destroyed, a copy or duplicate could be presented for probate.

Several months or perhaps a year before Shaw's death, on March 17, 1975, and subsequent to execution he called at the lawyer's office and asked to pick up "his will." In response the lawyer said, "fine" and delivered him the original of the two wills keeping the executed duplicate in his, the lawyer's, possession. Little other conversation took place at this meeting for it was explained that Shaw "didn't like to have his business pried into."

Upon Shaw's death, the copy of the executed will in decedent's possession could not be found although several searches and inquiries were made attempting to locate it. There is other evidence of a ransacking of Shaw's domicile and contents thereof after his death. There is likewise evidence of the existence or reference to the executed duplicate will in possession of decedent, but the exact date of such an event is not established.

Evidence did develop that Shaw called upon his lawyer numerous times after "taking his will" and conversed on many legal matters but at no time did he discuss revocation of the will, a new will or possible changes. The lawyer testified insofar as he knew, Shaw was represented by no other counsel during the critical times after delivery of the duplicate. He testified Shaw consulted him on all legal matters which were many and continued up until the time of his death.

The will provided that testator's estate should be set over to Shaw's sister, Abby Tarr, if she survived him; but she did not. The will then provided that in the case of Abby's demise before her brother's, then the estate should go to the Abby Tarr—Glenn C. Shaw Foundation and that "none of my estate shall go to any other relative

---

1. Rule 3.13 A(1): Where the Court of Appeals has decided a question of substance not heretofore determined by this court.

or heir." No foundation was ever created prior to testator's death by either decedent or Abby.

When the lawyer presented the duplicate will for probate a contest developed, and after an evidentiary hearing, the trial judge admitted the duplicate will for probate. The duplicate of course had been held by the lawyer in his possession from the date of execution.

This appeal followed.

The custom or practice of executing duplicate original wills is not of universal practice. From an "exceptional practice" in Oklahoma, during the first forty years of this century it has grown and continues to grow in popularity, until today perhaps far the greater number of wills are executed in duplicate. The self-proving statutes for some reason, seem to have increased the popularity of duplicate wills. If the practice has grown, and none can doubt it has, what is the reason? The lawyer for the proponent puts the case for duplicate wills thusly: "I explained to him that we would execute one copy in addition to the original of this will and that this would be done as a safeguard in the event the original will were misplaced, lost or inadvertently destroyed and that under proper circumstances in that event, the copy could be admitted to probate." The testator acquiesced.

As early as 1941, the California Supreme Court, in *In re Janes Estate*, 18 Cal.2d 512, 116 P.2d 438, 441 (1941), speaking through Justice Traynor observed:

"There is no reason why a testator may not execute two valid wills with identical provisions to insure the execution of his wishes should one of them be accidentally lost or destroyed. If it is properly executed, a copy of a will is in effect the same as a duplicate. * * * (Citations omitted); and it is clear that a properly

executed duplicate may be admitted to probate."

Equal dignity was accorded an executed carbon copy of a will in *Howard v. Combs*, 113 S.W.2d 221 (Tex.Civ.App.1938) and in Louisiana, *Jones v. Mason*, 234 La. 116, 99 So.2d 46 (1958).

*Janes* concerned duplicate holographic wills both of which had been in the possession of the testator. One will was found among the testator's personal effects and to this instrument was attached a note, unsigned and undated, stating "this is a copy of my last will, the original is in my safe deposit box." No will was found in the safety deposit box. The Supreme Court of California allowed probate of the duplicate will.

An almost identical set of facts was presented *In the Matter of Mittelstaedt's Will*, 280 App.Div. 163, 112 N.Y.S.2d 166 (1952), with the New York Court holding that any presumption of revocation was rebutted by the simple fact, the testatrix possessed one copy of the will at her death. The *Mittelstaedt* case followed a previous New York decision, *In re Shields*, 117 Misc. 96, 190 N.Y.S. 562 (1921).

In *Jones v. Mason, supra*, the facts are more in harmony with the instant case. The testator executed three copies of a holographic will; two of the carbon copies turned up, one with the testator's sister and one from the testator's desk. The original was never found. The Louisiana Court allowed probate of the duplicate copies.[2]

We have found no case where two duplicate wills were executed and one had been retained or taken by the testator only to disappear and thereafter an executed duplicate copy was allowed probate. This is the precise problem presented in the case at bar.

2. The Louisiana Court commenting upon its peculiar Napoleonic (Code) background cites *Pemberton v. Pemberton*, 13 Ves.Jun. 291, 33 Eng.Rep. 303 (1807) and concludes that the result in Louisiana is not due to the inherent difference in the judicial systems. *Pemberton* revealed that the testator had possession of duplicate executed wills at his death, one of

which had been altered and cancelled rather than lost. The English Court held in that case the uncancelled copy might be probated in the face of a presumption of revocation, since at most the presumption was a weak one and was overcome by the preservation of the duplicate copy.

For annotations on the presumption of revocation and its effect on duplicate wills, see *White v. Brennan*,[3] 3 A.L.R.2d 943, 982; *Later Case Service,* Vol. 1–6, page 368, and 79 Am.Jur.2d Wills § 628.

Oklahoma cases such as *Janzen v. Claybrook*, 420 P.2d 531 (1966), *Day v. Williams*, 184 Okl. 117, 85 P.2d 306 (1938) and *In the Matter of Estate of Molloy*, 539 P.2d 1400 (Okl.App.1975) do not concern nor deal with executed, duplicate wills; they deal with the burden of establishing a lost will. In our opinion 58 O.S.1971, § 82[4] does not aid in determining the status of executed duplicate wills, particularly if each will is entitled to equal dignity and force.

There can be no doubt that failure to produce or find a will known to have been in the possession of the testator or readily accessible thereto prior to his death, raises a presumption of revocation of such instrument. The annotations found and cases cited at 3 A.L.R.2d 943, 952, supra, show some 34 states have adopted such a general rule, or some form thereof. We would belatedly place Oklahoma within this group and adopt such a rule for the reasons that 58 O.S.1971, § 82 raises a presumption of revocation.

We return to Justice Traynor's dicta in *Janes, supra,* and the unanswered question thereunder. If the "duplicate" fully executed will or as it is sometimes described "duplicate original" will is of equal force or like import as its executed counterpart, then presenting the remaining executed copy for probate overcomes any presumption of revocation arising from loss or failure to find the "testator's copy." To us, this is the logical conclusion and extension of the argument and reasoning of *Janes, Mittelstaedt* and *Jones v. Mason, supra.*

There remains the obstacle of 58 O.S. 1971, § 82, supra.

The California Court in *Janes Estate* made this observation reference a similar statute as 58 O.S.1971, § 82 at page 442:

"The statute relating to lost or destroyed wills has no application because the petition did not seek to probate a lost or destroyed will, but a complete, valid holographic will. * * * The stringent requirements for proof of lost or destroyed wills are imposed to avoid fraud. In the instant case the existence of fraud is precluded by the production of a valid will executed by the testator, together with evidence that it contained the disposition that he wished to make of his property." [5]

The Louisiana Court in *Jones v. Mason, supra,* in dealing with the presumptions of revocation states 99 So.2d at page 49:

"In the instant case, therefore, we conclude that the presumption would be at the most a weak one and would be overcome by the fact that the testator had preserved one of the duplicate originals of his will in his possession. If in fact he had possession of two identical copies of his will, the presumption of revocation arising from the disappearance of one is overcome by the preservation of the other."

There seems no valid reason to attach deciding emphasis upon the single fact that a duplicate copy or duplicate original will known to have been in the possession of the testator prior to his death is not found or produced. We do not hesitate to go one step further than New York, California and Louisiana, for all copies are of equal force.

The modern practice of executing duplicate wills and the case put for same by proponent's lawyer is to be encouraged, the right to make a will is ancient in nature and

---

3.  307 Ky. 776, 212 S.W.2d 299 (1948).

4.  § 82: No will shall be proved as a lost or destroyed will, unless the same is proved to have been in existence at the time of the death of the testator or is shown to have been fraudulently destroyed in the lifetime of the testator, nor unless its provisions are clearly and distinctly proved by at least two credible witnesses.

5.  It can be argued with equal force that a statute such as 58 O.S.1971, § 82 tends to shield or protect fraud and that production of a "duplicate executed original" rightly negates or avoids such a presumption.

"public policy favors establishment of every legally executed will," *In the Matter of the Estate of Harper (Hood v. Lawrence National Bank)*, 202 Kan. 150, 446 P.2d 738 (1968).[6]

In summation, when Shaw's executed duplicate will was presented for probate and the proponents proved valid execution and mental capacity, the presumption of revocation brought about by the missing duplicate was overcome. The burden of proving revocation shifted and was placed where it belonged, on those persons contesting or more particularly claiming revocation under 84 O.S.1971, § 104.[7]

TRIAL COURT AFFIRMED.

All the Justices concur.

---

**6.** Testacy is favored in the law, *In Re Gilmore's Estate*, 76 Ariz. 313, 264 P.2d 399 (1953); Policy favors testacy, *In re Vermeerschs' Estate*, 109 Ariz. 125, 506 P.2d 256 (1973); *In re Barnes*, 63 Cal.2d 580, 47 Cal.Rptr. 480, 407 P.2d 656 (1965). See also *In the Matter of Estate of Potter*, 463 P.2d 1012 (Okl.App.1969).

**7.** § 104: "The revocation of a will, executed in duplicate, may be made by revoking one of the duplicates."