NORRIS, Judge.
This is a tort case in which the plaintiff, Mrs. Dickerson, was rear-ended by a following driver, Mr. Vallery. Mr. Vallery was then rear-ended by a second following driver, Mr. Jordan.* Mrs. Dickerson and her husband sued them both, along with their insurers, Jordan’s employer, and her own uninsured motorist carrier. After settling with all but Jordan’s employer, the City of Monroe, plaintiffs went to trial on the issue of whether Jordan’s negligence *720 was a contributing cause of her injury. The trial court found it was not and dismissed their claims. She and her husband now appeal and, for the reasons expressed, we affirm.
The accidents occurred on North 18th Street in Monroe. This is a broad north-south artery consisting of two northbound and two southbound lanes without a median. North 18th intersects in a “T” with McKeen Place, which meets it on the west but does not cross. The intersection is governed by traffic lights. All the vehicles involved in this case were driving north in the right-hand lane of North 18th and were approaching McKeen Place. It was about 11:20 a.m. on a clear, dry August day and the lunchtime traffic was heavy.
According to Mrs. Dickerson, she came up to the McKeen Place light where two or three cars were waiting, but before she arrived, the light changed to green. She followed slowly behind the cars until the lead car made a right turn into a private parking lot and brought traffic to a stop. Mrs. Dickerson testified she stopped suddenly, but it was not an “emergency” stop. Glancing in her rear-view mirror she noticed a large pickup truck and realized it was coming too fast to stop in time. She estimated the truck’s speed at 15-20 m.p.h. She braced herself by putting her foot on the brake and gripping the steering wheel. She then heard and felt what she described as two impacts that happened very quickly. She testified that one of these impacts pushed her five or six feet forward. The vehicle that struck her was Vallery’s Ford pickup.
Vallery testified that he had stopped at the previous red light and then driven up towards McKeen Place. As he neared, the light was red and a few” cars were waiting. He approached, going about 15-20 m.p.h., and saw the light turn green. The cars started but quickly stopped. In his rear-view mirror, he could see Jordan’s truck coming up fairly fast; Jordan was looking off into the other lane, and Vallery was sure that Jordan would not see to stop. Vallery pulled up to within six or seven feet of Mrs. Dickerson’s Thunderbird and decided he had to stop or he would hit her. He testified that he firmly applied his brakes and stopped without ever touching the Thunderbird. He heard no brakes squeal but was immediately hit from behind. He was not hurt, however, and insisted the impact did not thrust him into Mrs. Dickerson’s car. When he got out of his truck, there was still a space of five or six feet between the front of his truck and the back of the Thunderbird.
Jordan testified he was also riding north, traveling from a jobsite on North 19th Street to another on Park Avenue, in the course and scope of his employment for the City of Monroe. His 1976 Chevy Luv truck was considerably smaller than Vallery’s Ford truck. As he went down North 18th in the right lane, he was looking at the left lane, which was moving faster. He was motioning to a friend in the left lane to let him merge, and was not paying attention to the traffic straight ahead. When he finally looked up, he realized he was too close and was going to hit the back of Vallery’s truck. He stomped on the brake but rear-ended Vallery’s truck almost immediately. He estimated his speed at ten to 15 m.p.h. on impact. He was positive that the impact did not make Vallery’s truck move forward.
When everyone got out and inspected the damage, they found Jordan’s front grill and headlights smashed under Vallery’s rear bumper. Between Vallery's truck and Mrs. Dickerson's Thunderbird, however, there was enough space for her to walk through. Despite Vallery’s insistence that he had not hit her, and the obvious space between their vehicles, Mrs. Dickerson said she had been hit twice. She reported this to Officer Douglas, who responded to the call. However, neither Officer Douglas nor anyone else at the scene could detect even the slightest damage to the Dicker-sons’ Thunderbird.
Apart from her testimony and the medical evidence of her back problems, Mrs. Dickerson argued two additional factors to prove that she had been hit. First was the evidence that her three year old grandson, who was riding in the front seat with her, *721 had bit his lip and had a bloody mouth as a result of the impact. Mrs. Dickerson and her daughter, Mrs. Petty, both testified to this, but no one else at the scene remembered the child having a bloody lip. Mrs. Petty’s lawsuit for her son’s injuries was settled before trial, so this particular issue was not actually resolved. Second was the testimony of three body shop mechanics. They established that Mrs. Dickerson’s car had a slight buckling of the left rear quarter panel, a slightly crooked bumper reinforcement and some minor frame misalignment, all consistent with a gentle rear-end collision. One of the mechanics, John Justice, also discovered buckling of the right rear quarter panel, but because this buckling was rusty, he attributed it to an old accident. Both Mrs. Dickerson and her husband insisted the car had never been in any prior accident. Mrs. Dickerson complained that these damages made the ear difficult to drive, but Mr. Justice and another mechanic, Mr. East, testified that these minor damages should not have been noticeable.
One other witness to the accident, Mr. Elias, was standing in the Brookshire’s parking lot on the southwest comer of the intersection. Because he was putting groceries in a car, his head was down and he did not see the collision, but he testified that he heard a screech of brakes and one loud crash. He looked up and saw the two trucks touching and the Thunderbird some three or four feet in front of the first truck. He was quite sure he had heard only one crash, despite Mrs. Dickerson’s unremitting claim that she had been hit twice. Similarly, Officer Douglas seemed unconvinced that there had been more than one collision, but he wrote Mrs. Dickerson’s claims into the accident report because she was so adamant about it at the scene.
Mrs. Dickerson began the litigation by suing her UM carrier, Vallery and his insurer, Jordan and his insurer, and the City of Monroe, Jordan’s employer. Mr. Dickerson was later added as a plaintiff, claiming loss of consortium. There were numerous cross claims and reconventional demands. Mrs. Dickerson’s daughter, Mrs. Petty, filed a separate suit for her son’s injuries. The suits were consolidated for trial. However, before trial, all claims were settled with the exception of the Dickersons’ demand against the city of Monroe. Trial was conducted with the stipulation that Jordan had been acting in the course and scope of his employment when the accident occurred. The only issue was whether Jordan’s negligence contributed to the Dicker-sons’ injuries.
The trial court issued detailed and well considered reasons for judgment. It noted the inconsistencies in the testimony, stating that even though Mrs. Dickerson was not pursuing a fraudulent claim, she was in error in relating her impression of what happened. The court found that Mrs. Dickerson was indeed struck by Vallery. It also found that Vallery was struck by Jordan. The court further found, however, that the crash between Jordan and Vallery did not push Vallery forward. The court outlined four possible ways the accident might have happened, but concluded that the discrepancies in the testimony kept the evidence from preponderating in favor of any way that afforded plaintiffs recovery. The court concluded that the most probable explanation was that there was first a light to moderate impact between Vallery and Mrs. Dickerson which pushed the Thunderbird some five or sue feet, followed by a moderate impact between Jordan and Val-lery. The second impact did not push Val-lery’s heavy pickup into Mrs. Dickerson’s Thunderbird. This explanation is consistent with Mrs. Dickerson’s testimony that she heard two “bams,” and is consistent with the damage to her car and the locations of the vehicles after the accident. It is inconsistent with her testimony that she felt two jolts and perhaps with Elias’s testimony that he heard only one crash, but this is less inconsistency than the other theories would admit. The court denied the Dicker-sons relief and they have appealed.
By their first two assignments of error, appellants claim the trial court committed legal error by not shifting the burden of proof to the defendant to exculpate himself from the rear-end collision and that the court committed manifest error by failing *722 to find that Jordan was responsible for the injuries. Because these issues are so closely allied, we will consider them together.
Appellants begin by correctly arguing the general rule of law that when a rear-end accident occurs, the driver -of the following vehicle is usually presumed negligent. Eubanks v. Brasseal, 310 So.2d 550 (La.1975); Coates v. Marcello, 235 So.2d 162 (La.App. 4th Cir.1970), and citations therein; Overstreet v. Ober, 14 La.App. 633, 130 So. 648 (2d Cir.1930). When this presumption is applied, it effectively shifts the burden of proof to the driver of the following vehicle to prove that he was not negligent. Eubanks v. Brasseal, supra. Appellants accordingly argue that shifting the burden of proof is the “first and threshold issue” of this case. This is not correct.
When a rear-end collision occurs, the law presumes that the following driver is negligent. However, the law does not presume that a collision occurred in the first place. Logic demands that before a legal presumption may be applied, a basic evidentiary foundation must be laid. LSA-C.C. art. 1849; Jones v. Mason, 234 La. 116, 99 So.2d 46 (1958); Loprestie v. Roy Motors, 191 La. 239, 185 So. 11 (1938). Before we can presume that Jordan was negligent as to Mrs. Dickerson, the plaintiffs must first lay out essential facts to show that Jordan’s conduct in rear-ending Vallery caused a rear-end collision between Vallery and Mrs. Dickerson. The mere fact that Mrs. Dickerson proved a rear-end collision with Vallery is not sufficient to prove negligence on the part of Jordan without this proof.
The trial court, after carefully weighing the evidence, made a specific finding that the Dickersons had not proven by a preponderance of evidence that Jordan ran into Mrs. Dickerson or caused Vallery to crash into her. The trial court’s assessment of the evidence and its findings of fact are entitled to great deference. They will not be set aside absent a showing of manifest error. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978). Given the conflicting and contradictory state of the evidence offered, we are in no position to second-guess the trial court; we cannot say that the findings are plainly wrong. True, the factual finding is inconsistent with part of Mrs. Dickerson’s testimony, but the court concluded that Mrs. Dickerson was partly in error in relating the events surrounding the accident. We have absolutely no grounds for disturbing this credibility call. Succ. of Jones v. Jones, 486 So.2d 1124 (La.App. 2d Cir.1986), writ denied 489 So.2d 249 (La.1986); Kendrick v. Kendrick, 236 La. 34, 106 So.2d 707 (1958). As the trial court noted, any other interpretation of the facts would conflict with even more witnesses’ testimony and with the physical placement of the vehicles after the accident.
The cases on which appellants rely to show that the burden must shift to the defendant are inapposite. Dufrene v. Miller, 266 So.2d 462 (La.App. 4th Cir.1972), writ denied 263 La. 366, 367, 268 So.2d 257 (1972), involved a multiple-car rear-end collision. By the time the last car smashed into the middle car and propelled it into the plaintiffs’ car, the plaintiffs had already alit and observed the crash from the side of the road. The occupants of the middle car also testified that the third car caused the final collision. Thus there was more than sufficient evidence to establish the fact of a collision and to activate the presumption of negligence. This is not the situation in the instant case. Another case, Rodriguez v. Traylor, 461 So.2d 413 (La.App. 4th Cir.1984), rev’d on other grounds 468 So.2d 1186 (La.1985), illustrates evidence sufficient to justify applying the presumption of negligence. The case of Probst v. Wroten, 433 So.2d 734 (La.App. 5th Cir.1983), involving separate two-car collisions that occurred nearly one year apart, is clearly inapplicable to the instant case.
When the evidence does not show that the last car caused an impact between the middle and lead cars, the presumption is not applied. See State Farm Mut. Auto Ins. Co. v. Farnsworth, 425 So.2d 827 (La. *723 App. 5th Cir.1983), writ denied 433 So.2d 150 (La.1983).[1]
In sum, we cannot detect any error in the trial court’s method of first deciding whether Jordan’s truck caused an impact with Mrs. Dickerson’s car, and then turning to the question of whether to apply the presumption of negligence. This procedure is logical and not erroneous. Furthermore, the court’s factual finding that Jordan was not responsible is not manifestly erroneous. For these reasons, the judgment appealed from is affirmed at appellants’ costs. The third assignment of error, pertaining to quantum, is pretermitted.
AFFIRMED.

. Overruled on other grounds in Randall v. Fe-duda, 507 So.2d 1237 (La.1987).