682 So.2d 1320 (1996)
In the Matter of the SUCCESSION OF Mabel Rebelle ALTAZAN.
No. 96 CA 0409.
Court of Appeal of Louisiana, First Circuit.
November 8, 1996.
David L. Dawson, Jr., Baton Rouge, for AppelleeRalph L. Altazan.
William G. Davis, Baton Rouge, for AppellantShirley R. Knighton.
Before WHIPPLE, PITCHER and FITZSIMMONS, JJ.
FITZSIMMONS, Judge.
The issue is whether the testator's husband presented sufficient proof to rebut the legal presumption that the testator had revoked the will. We affirm the trial court's finding that the testator's husband met his burden of proof and rebutted the presumption.

FACTS AND PROCEDURAL BACKGROUND
The decedent, Mabel Rebelle Altazan, made a will in statutory form before a notary public on April 3, 1989. Mrs. Altazan left her share of the community property and a usufruct over her separate property to her husband of 52 years, Mr. Ralph L. Altazan. The naked ownership of her separate property was left to her son from an earlier marriage, Shirley R. Knighton. The will was put into a brown envelope and placed in a drawer in the decedent's bedroom. The bedroom was shared with her spouse, Mr. Altazan. Mrs. Altazan died in November of 1993. Sometime in 1995, Mr. Altazan retrieved what he believed to be the will from the *1321 drawer. However, the will given to his attorney was a copy of the original. The envelope contained only copies. The original could not be found.
On July 10, 1995, Mr. Altazan filed a petition to probate a statutory testament and sought to have the copy probated. Mrs. Altazan's son, Mr. Knighton, objected. Mr. Knighton asserted that when an original is missing, a legal presumption arises that the original has been destroyed. Therefore, Mrs. Altazan died intestate. Under an intestate succession, Mr. Knighton would receive the full ownership of the separate property and the naked ownership of Mrs. Altazan's community property share. See La. Civ. Code art. 888, et seq.
A rule to show cause hearing on why the copy of the will should not be probated was held on October 24, 1995. The parties did not contest the making of the will by Mrs. Altazan or the contents. The only issue to be decided was whether Mr. Altazan could rebut the legal presumption that the 1989 will had been revoked.
In the oral reasons for judgment, the trial court relied on witnesses other than Mr. Altazan, Mr. Knighton, and his wife, Patty Knighton. The witnesses presented by Mr. Altazan, the plaintiff in the rule, were found to be more credible by the trial court. Based on these witnesses' testimony, the trial court determined that, by all accounts, Mrs. Altazan was a strong willed woman, who would have called her attorney or affirmatively told someone if she wished to change or revoke her will. The trial court found that Mrs. Altazan had not done so. Thus, the trial court held that the evidence presented by Mr. Altazan was sufficient to rebut the presumption that Mrs. Altazan destroyed or revoked the will. The judgment ordered that the copy be admitted for probate.
The cumulative testimony of the witnesses relied on by the trial court established the following facts. Mr. and Mrs. Altazan had a loving relationship. Mrs. Altazan and her son, Shirley Knighton, also had a close relationship. After Mrs. Altazan became ill, Mr. Altazan was the primary care-giver for his wife during the last few years of her life. Her son, Mr. Knighton, helped when he could. Mrs. Altazan stated to the plaintiff's witnesses that she wanted Mr. Altazan to have her share of the community and the use of her separate property. These witnesses also testified that Mrs. Altazan expressed no dissatisfaction with the will or desire to change or revoke it.

REVOCATION
"The Civil Code provides that a will may be revoked by act of the testator either expressly ... or tacitly, resulting from some other disposition of the testator ..., or some other act which supposes a change of will." Succession of Talbot, 530 So.2d 1132, 1134 (La.1988), citing La. Civ.Code arts. 1691-95. In Talbot, the supreme court also stated that:
Although the Code does not specify that the destruction of a testament constitutes a revocation thereof, the fact of intentional destruction by the testator as constituting the most effective method of invalidation has been recognized by this court on many occasions.
Further, this court has adopted the uniformly adhered to rule that the failure to find a will which was duly executed and in the possession of, or readily accessible to, the testator, gives rise to a legal presumption of revocation by destruction; however, this presumption is a rebuttable one and so may be overcome by sufficient evidence.
Moreover, in Jones v. Mason, 234 La. 116, 99 So.2d 46 (1958) this court applied that presumption of revocation in a case in which a testator executed his will in multiple copies, one original and several carbon copies. After the testator's death, the original was missing and only two of the carbon copies were found. This court recognized that these facts gave rise to a presumption of destruction and revocation but ultimately concluded that the presumption was a weak one which had been overcome by the testator's preservation of one of the duplicate originals of his will in his possession.
.... .
A presumption shifts the burden of producing evidence and, under the preferable *1322 view, serves to assign the burden of persuasion as well.
.... .
One frequently significant consideration in the fixing of the burdens of proof is the judicial estimate of the probabilities of the situation: the risk of failure of proof is often placed upon the party who contends that the more unusual event has occurred. In the present case, [Talbot,] we conclude that this consideration is predominant and that the proponent of the will should bear the burden of proving that a testator, who intentionally destroyed a copy of his will under circumstances consistent with his having an aim to revoke, either did not in fact intentionally authorize or commit the destructive act or else did not do so with an intention to revoke. The presumption may be weak or strong, and more or less easily rebuttable, depending on the clarity of the evidence as to whether the testator was the author of the will's destruction, whether he expressed an intention to revoke the will, whether he had access to other originals of the will prior to his death, whether he treated any extent copy of the will as not having been revoked, and as to any other issue bearing upon the testator's intention with respect to the destruction and revocation of the will. (case citations omitted and emphasis added.)
Succession of Talbot, 530 So.2d at 1134-35.
Thus, the burden of proof is on the proponent of the missing will. However, the same level of proof is not used in every case. It is clear that the supreme court in Talbot recognized a sliding scale of proof sufficient to rebut the presumption depending on the weakness or strength of the evidence surrounding the lost original.
In Talbot, the supreme court was faced with a testament prepared in multiple originals. Talbot, 530 So.2d at 1132. The testator destroyed one of the originals in the presence of a witness and declared his intention to revoke. Talbot, 530 So.2d at 1133. Under those strong facts, the supreme court found that the presumption applied and opined that the presumption could only be rebutted by clear and convincing evidence. Talbot, 530 So.2d at 1136. The supreme court noted that the evidence of revocation was strong and that the plaintiff prevailed without the use of the presumption in the trial court. Id. The supreme court found that the presumption had not been rebutted and held for the plaintiff, the opponent of the will. Talbot, 530 So.2d at 1137.
In brief, Mr. Knighton relies on Succession of Bagwell, 415 So.2d 238 (La.App. 2d Cir. 1982) and asserts that the level of proof required to rebut the presumption is always clear and convincing. However, the second circuit in Bagwell did not require such a standard in all cases. The proponent of the will had tried to prove that someone else, other than the testator, had destroyed the will. The court merely noted that in cases where it is alleged that someone other than the testator destroyed the will, "[c]lear and convincing proof that a person other than the testator destroyed the will without the direction, consent, or permission of the testator would be sufficient to overcome the presumption that the testator revoked the will by destroying it." Bagwell, 415 So.2d at 240. However, the testator in Bagwell expressed dissatisfaction with the prior beneficiaries under the will, obtained either the original or copy of the will from his lawyer, and expressed an intent to modify the will. Thus, the court of appeal found that the evidence was insufficient to rebut the presumption. Id.

CONCLUSION
Mr. and Mrs. Knighton testified that Mrs. Altazan was not happy with the contents of the will. Mr. Knighton testified that Mrs. Altazan said that she would "take care of it." However, the trial court found the testimony of the directly concerned parties, the Knightons and Mr. Altazan, self-serving or ambiguous. Instead, the trial court relied on other witnesses for the facts. After a thorough review of the entire record, we find no abuse of discretion in the trial court's findings on credibility. Based on the testimony of the witnesses relied on by the trial court, we find no error of law in the court's holding that, under the circumstances of this case, Mr. Altazan's evidence was clear and *1323 sufficiently rebutted the presumption that the will had been revoked.
Over the years, Mrs. Altazan repeatedly stated her wish that Mr. Altazan have use of the separate property and receive the community property after her death. This result is consistent with the will, copies of which were retained as in Jones. Those statements are inconsistent with a revocation of the will. She expressed no dissatisfaction with the provisions of the will nor did she express a desire to revoke the will to the witnesses deemed credible by the court. Other "plausible" explanations for the missing will exist. See Talbot, 530 So.2d at 1137. The record contains testimony that the will was taken out of the envelope and shown to other people. A copy was given to Mr. Knighton. The original may have been lost or a copy may have been mistaken for the original and retained in the envelope. The circumstances discussed in Bagwell and Talbot, which would require a clear and convincing level of proof, are not present in this case.
For these reasons, we affirm the judgment of the trial court. The costs are assessed to the defendant in the rule, Mr. Shirley R. Knighton.
AFFIRMED.