339 So.2d 897 (1976)
Murphy FONTENOT et al., Plaintiffs-Appellants,
v.
Doline Corkin FONTENOT et al., Defendants-Appellees.
No. 5681.
Court of Appeal of Louisiana, Third Circuit.
November 10, 1976.
Rehearing Denied December 15, 1976.
Writ Refused February 11, 1977.
*899 Bean & Rush by Warren D. Rush, Lafayette, for plaintiffs-appellants.
Guillory, McGee & Mayeux by A. Frank McGee, Eunice, for defendants-appellees.
Before HOOD, DOMENGEAUX and GUIDRY, JJ.
DOMENGEAUX, Judge.
Plaintiffs-appellants, Murphy Fontenot, Norma Fontenot Fournerat, and Dolan Fontenot, petitioned for the annulment of a judgment of possession in favor of defendants-appellees, Doline C. Fontenot and Rosemary Pollingue Fontenot, which placed the latter in possession of certain property belonging to the estate of Milton Fontenot. From a partially adverse judgment, plaintiffs have appealed. Defendants have answered the appeal seeking certain modifications of the district court's judgment.
Some time in the mid-1930s Doline Corkin (Fontenot) and Milton Fontenot began living as husband and wife in the town of Eunice, Louisiana. Living with the couple was Doline Corkin's daughter by a previous marriage, Rosemary Pollingue. On November 30, 1940, Milton Fontenot purchased a sizeable tract of land (37.75 arpents) near Eunice, hereinafter referred to as the "Mamou Road" property. The deed recited that Milton Fonetenot was married to and living with Doline Corkin. The purchase price of the property was $800.00 of which $250.00 was paid at the time of the transaction, the balance being due six months thereafter. The record clearly indicates that the $250.00 down payment was provided by Doline Corkin.
On April 29, 1941, Milton Fontenot and Doline Corkin were married in Oberlin, Allen Parish, Louisiana. Some time thereabout Milton and Doline Fontenot and Rosemary Pollingue moved out to the Mamou Road property. The trio cleared a portion of the land and erected a residence thereupon. On May 26, 1941, Milton Fontenot (appearing as married to Doline Corkin) sold the Mamou Road property to the St. Landry Homestead Association for $2,000.00 and purchased the property back therefrom on the same date. This transaction was obviously a typical sale and repurchase for purposes of affording a vendor's privilege to the Homestead Association as additional security for a loan.
On December 10, 1971, Milton Fontenot conveyed to one Hubert Dupre, a portion of the Mamou Road property consisting of 1.41 *900 acres and all improvements thereon (family dwelling). Thereafter, Mr. and Mrs. Fontenot moved into the town of Eunice, and bought a home, which they sold, purchasing the house in which they lived at the time of Mr. Fontenot's death.
On November 3, 1956, Milton Fontenot executed an authentic act whereby he adopted Rosemary Pollingue. The document was placed in a safety deposit box and remained unrecorded until January 20, 1975.
Milton Fonetenot died on November 27, 1974, leaving a Last Will and Testament, bequeathing all of his property to his three (3) children (by a prior marriage), Murphy Fontenot, Norma Fontenot Fournerat, and Dolan Fontenot, and his adopted daughter, Rosemary Pollingue Fontenot, "share and share alike". This disposition, however, was subject to a lifetime usufruct upon said property granted to the surviving spouse, Doline Corkin Fontenot.
The trial judge found that the Mamou Road property belonged to the separate estate of Milton Fontenot, subject to possible reimbursement to the community of acquets and gains existing between the deceased and Doline Corkin Fontenot, that the adoption of Rosemary Pollingue Fontenot was valid, and that the usufruct granted to Doline Corkin Fontenot impinged upon the legitime of the forced heirs.
Plaintiffs contend that:
(1) the Mamou Road property belongs to the separate estate of Milton Fontenot and is not indebted to the community of acquets and gains.
(2) the adoption of Rosemary Pollingue was invalid due to the failure to record the authentic act thereof prior to the adopter's death.
(3) certain United States Savings Bonds payable to Milton Fontenot or Doline Corkin Fontenot are community property.
(4) the forced heirs of Milton Fontenot are entitled to their legitime unencumbered by the testamentary usufruct and may claim their inheritance without first proving that the value of said usufruct impinges upon their legitime.
(5) the community of acquets and gains owes $18,525.00 to the separate estate of Milton Fontenot, due from the sale of a portion of the Mamou Road property to Hubert Dupre in 1971.
(6) they are entitled to attorney's fees payable from the succession funds in the amount of $12,500.00.
Defendants maintain that:
(1) the Mamou Road property is owned solely by Doline Corkin Fontenot and in the alternative was owned by the community of acquets and gains or by Milton Fontenot and Doline Corkin Fontenot jointly (joint adventure).
(2) the adoption of Rosemary Pollingue is valid.
(3) no money is owed the separate estate of Milton Fontenot by the community for funds acquired via the sale to Hubert Dupre.
(4) the forced heirs must demonstrate that the usufruct granted Doline Corkin Fontenot impinges upon their legitime before they are entitled to make an election under LSA-C.C. 1499.

THE MAMOU ROAD PROPERTY
The record clearly indicates that the 37.75 arpents purchased by Milton Fontenot on November 30, 1940, was his separate property, notwithstanding the marital declaration contained in the deed relative thereto. A community of acquets and gains cannot exist without a marriage, and any property acquired prior thereto must necessarily be of a paraphernal nature. See LSA-C.C. Articles 2334 and 2402; Jefferson v. Stringfellow, 148 La. 223, 86 So. 774 (La.1920). Of course Doline Corkin Fontenot is entitled to an individual reimbursement for the initial down-payment of $250.00 which the record indicates came from her separate funds. Furthermore, since the property was purchased on November 30, 1940, and the parties were married on April 29, 1941, it appears that the *901 credit balance of the purchase price (due six months after date of purchase) was paid off with community funds. Therefore, the community is entitled to a reimbursement of the $550.00 representing the credit portion of the sale on the Mamou Road property.
Concerning the sale and repurchase to the St. Landry Homestead Association on May 26, 1941, our law is clear that such transactions do not change the nature and status of the property involved. See Ruffino v. Hunt, 234, La. 91, 99 So.2d 34 (La. 1958); Mayre v. Pierson, 171 La. 1077, 133 So. 163 (La.1931); and Lazaro v. Lazaro, 92 So.2d 402 (La.App.Orl.1957).
Although the Mamou Road property and all improvements thereon belong solely to the separate estate of Milton Fontenot, the community of acquets and gains is entitled to a reimbursement for any enhancement of the property as a result of community effort. LSA-C.C. 2408; Abraham v. Abraham, 230 La. 78, 87 So.2d 735 (La.1956); Succession of Singer, 208 La. 463, 23 So.2d 184 (La.1945); Palama v. Palama, 323 So.2d 823 (La.App.4th Cir. 1976), writ refused 326 So.2d 381; Succession of Broussard, 306 So.2d 399 (La.App.3rd Cir. 1975). In order to receive reimbursement for the enhanced value of the property under Civil Code Article 2408, a party must show: (1) that the improvements did in fact enhance the property; (2) that the improvements were made with community funds or joint labor; (3) the value at the commencement and dissolution of the community; and (4) that the enhancement did not result in the ordinary course of events, i.e. a natural appreciation of immovable property, etc. Succession of Rusciana, 136 So.2d 509 (La.App.1st Cir. 1962).
The record is practically devoid of any evidence concerning the enhanced value of the Mamou Road property and any causation thereof. Therefore this portion of the case must be remanded to the district court for a proper appraisement and evaluation consistent with the views expressed herein. See Succession of Singer, supra.
Plaintiffs argue that the $18,525.00 realized from the sale of the property to Hubert Dupre (1.41 acres, with improvements, in 1971) was the separate property of Milton Fontenot and that the community owes a reimbursement therefor. Plaintiffs' claim is not without merit. However, as we have already stated, the community of acquets and gains would also have been possessed with a claim against said money as a reimbursement for enhancement of the 1.41 acres in question due to community efforts. As a practical matter, these conflicting claims would probably act as a mutual offset. Furthermore, the record indicates that the sums realized from the Hubert Dupre sale were so commingled over the next few years with community monies as to render their traceability virtually impossible. For these reasons we find that the community is not indebted unto Milton Fontenot's separate estate for the funds acquired from the abovementioned sale.
Finally, defendants argue that the purchase of the Mamou Road property might be considered a joint adventure on behalf of Milton Fontenot and Doline Corkin. While the joint adventure approach may have some equitable merit, the case of Hayes v. Muller, 245 La. 356, 158 So.2d 191 (La.1963) clearly puts the issue to rest. In Muller, the plaintiffs attempted to demonstrate the existence of a joint adventure between themselves and the owner of certain mineral leases. Therein, the Court stated as follows:
"The important question then is: Can the plaintiffs show an agreement by parol? We think not. The parol evidence rule has been applied by this court not only in cases involving contracts which directly affect title to realty but also in others where the litigants merely sought to derive benefits growing out of verbal agreements relating to the sales of immovable property. . . .
. . . we held that a plaintiff cannot show an oral agreement to purchase property for him, and enforce the contract when it has been fraudulently violated (by acquisition in defendant's *902 name), despite the argument made therein that the evidence did not constitute an attack on the title of the defendant but was merely an attempt to profit from and through such title."
The rule enunciated in Muller is clear, and we are not empowered to deviate from its holding.
Therefore, we hold that the Mamou Road property belongs to the separate estate of Milton L. Fontenot, the decedent. The community of acquets and gains formerly existing between Doline Corkin Fontenot and the deceased is possessed with a claim against the latter's separate estate for whatever enhancement of the Mamou Road property (less, of course, the 1.41 acres, with improvements, transferred to Hubert Dupre in 1971) was brought about by community effort or funds, as well as a return of the credit portion of the purchase price therefor. In addition, Doline C. Fontenot is entitled to the return of the $250.00 down payment which she provided for the Mamou Road property.

THE ADOPTION OF ROSEMARY POLLINGUE FONTENOT
Plaintiffs contend that in executing the act of adoption the parties failed to comply with the strict requirements of LSA-R.S. 9:461, which provides as follows:
"§ 461. Right of adoption; conditions, limitations, and procedure
Any person above the age of twenty years may adopt any person over the age of seventeen years, according to the following conditions, limitations and procedure:
(1) That the adoption shall be effected by the execution of a notarial act signed by the adoptive parent or parents and the person to be adopted, where the person to be adopted is a major or an emancipated minor, or by the adoptive parent or parents and the living parent or parents or guardian or tutor, or a tutor ad hoc appointed for the purpose, of the person to be adopted where the person to be adopted is an unemancipated minor over the age of seventeen years; provided, however, that whenever proceedings are instituted to appoint a tutor or tutors ad hoc, as herein provided, that all proceedings in connection therewith shall be heard by the judge, in chambers, that records of the proceedings, except the act of adoption proper, shall not be opened for inspection except on authorization by the court, and there shall be no publication thereof, and all pleadings and offerings filed under this Section since January 1, 1952, save the said act of adoption, shall be confidential, and indexed and filed by the clerk of court, as provided in R.S. 9:437.
(2) That the notarial act executed in accordance with paragraph (1) of this Section shall be registered with the clerk of court of the parish in which the act is executed, except in the parish of Orleans, where it shall be registered with the register of conveyances for the parish of Orleans. The clerk of court or register of conveyances shall record all such notarial acts of adoption, except as otherwise provided in paragraph (1) hereof, in a separate book kept by him for the purpose, and shall keep an index of the same under the names of the adoptive parents and the person adopted. As amended Acts 1952, No. 514, § 1."
The act itself was properly executed on November 3, 1956, but as aforementioned it was not recorded until January 20, 1975, approximately two months after the death of the decedent-adopter. Plaintiffs argue that failure to record the act of adoption in accordance with LSA-R.S. 9:461(2) renders the adoption itself invalid. In support of their proposition plaintiffs cite Succession of D'Asaro, 167 So.2d 391 (La.App.4th Cir. 1964), which is directly on point to the issue presented herein. The D'Asaro case has been criticized at 26 La. Law Review 143 and 26 La. Law Review 465. We are inclined to agree with the criticism of the holding therein and choose not to follow that line of jurisprudence. See In re Bourgue, 245 So.2d 525 (La.App.3rd Cir. 1971), wherein we held that certain requirements in the adoption statutes were merely directory *903 and that failure to comply with every minute detail did not render an adoption an absolute nullity.
We are of the opinion that the recordation requirement of LSA-R.S. 9:461(2) is of a directory nature and has no bearing upon the actual validity of the act itself under the facts presented herein.[1] For these reasons we hold that the trial judge correctly found that the adoption of Rosemary Pollingue Fontenot by the decedent was proper and valid and that she is indeed a forced heir of Milton Fontenot.

THE UNITED STATES SAVINGS BONDS
Decedent and his wife owned a number of U.S. Savings Bonds made payable to Milton L. Fontenot or Doline Corkin Fontenot. We are aware, of course, that in accordance with Federal Treasury Regulations, either designated holder may fully negotiate and transfer said bonds. However, under Louisiana Law, although the bonds need not be included in the descriptive list of the succession, the value of the decedent's community interest in the bonds must be included therein. Therefore, the community of acquets and gains owned a sum of money equivalent to the value of the bonds at the time of decedent's death, and one-half the value thereof necessarily forms a part of his patrimony. See Succession of Videau, 197 So.2d 655 (La.App.4th Cir. 1967), writ refused 250 La. 920, 199 So.2d 922; and Succession of Guerre, 197 So.2d 738 (La.App.4th Cir. 1967), writ refused 250 La. 928, 199 So.2d 925, 926.

THE FORCED HEIRS' RIGHT TO ELECT UNDER LSA-C.C. ARTICLE 1499
Civil Code Article 1499 provides as follows:
"Art. 1499. If the disposition made by donation inter vivos or mortis causa, be of a usufruct, or of an annuity, the value of which exceeds the disposable portion, the forced heirs have the option, either to execute the disposition or to abandon to the donee the ownership of such portion of the estate as the donor had a right to dispose of."
Defendants argue that plaintiffs must demonstrate that the value of the usufruct granted Doline Corkin Fontenot by the testator impinges upon the value of the forced portion, in this case two-thirds of the decedent's estate, LSA-C.C. Article 1493. Certainly, a literal reading of C.C. 1499 would seem to support said position. However, in Succession of Hyde, 292 So.2d 693 (La.1974), the Supreme Court held that a forced heir need not prove that the value of the usufruct impinged upon his legitime in order to make the election provided for in C.C. 1499.
A notarial act executed September 4, 1975, (contained in the record but apparently not properly introduced at trial) by Murphy Fontenot, Norma Fontenot Fournerat and Dolan Fontenot (Tr. 120-121) indicates that these particular forced heirs have elected to take their legitime free of the testamentary usufruct and abandon the remainder of decedent's property to his surviving spouse. Under the doctrine of the Succession of Hyde, supra, these heirs have an absolute right to make such a choice without any showing whatsoever of the value of the usufruct. The remaining forced heir, Rosemary Pollingue Fontenot, of course, has the same option.

ATTORNEY'S FEES
Plaintiffs request that the court award them the sum of $12,500.00 for attorney's fees out of the mass of decedent's estate. We know of no authority nor have we been directed toward any by plaintiffs that legal fees resulting from an opposition *904 to a succession are to be paid by anyone other than those so opposing. For that reason plaintiffs' claim in this regard is denied.
For the above and foregoing reasons the judgment of the district court is affirmed and the case is remanded to the district court for any necessary further proceedings consistent with the opinions expressed herein. Costs of this appeal are assessed against plaintiffs-appellants.
AFFIRMED AND REMANDED
NOTES
[1] We are aware, of course, that non-recordation of the act of adoption could, under particular circumstances, operate to the detriment of certain third parties. However, generally speaking, legal heirs are not regarded as third persons in the law. See 26 La.L.Rev. 143, 146, footnote # 10 and cases cited therein. Furthermore, even if the plaintiffs herein had been placed on notice via recordation, prior to the testator's death, they would have been powerless to attack the adoption at that time because of the factual situation attendant hereto.