393 So.2d 253 (1980)
Quincy ADAMS, Executor of the Succession of B. J. Adams
v.
Floyd CARTER, Executor of the Succession of Winnie Carter Adams (3 Cases).
Nos. 13656-13658.
Court of Appeal of Louisiana, First Circuit.
November 10, 1980.
Rehearing Denied January 26, 1981.
Writ Refused April 6, 1981.
*254 Robert L. Henderson, Jr., Slidell, for plaintiff.
John N. Gallaspy, Bogalusa, for defendant.
Before ELLIS, COLE and WATKINS, JJ.
COLE, Judge.
The issue in this appeal is whether or not the trial court erred in awarding the Succession of B. J. Adams $10,675.00 for onehalf of the enhanced value of certain separate property belonging to the Succession of Winnie Carter Adams. At trial three cases concerning various claims by the estate of B. J. Adams against the estate of Winnie Adams were consolidated. We are concerned here with only one of these suits.
The pertinent facts are as follows: B. J. Adams and Winnie Carter were married in June of 1957; each had been previously married. The couple moved to the forty acre tract of land owned by Winnie Carter Adams. On the land were various improvements such as a house, several barns and various outbuildings. In subsequent years all buildings except one barn were torn down and rebuilt, including the house. B. J. Adams died on December 7, 1975 and Winnie Adams died on May 11, 1977.
On October 24, 1978, Quincy Adams, as executor of the succession of B. J. Adams, filed suit against Floyd Carter, executor of the succession of Winnie Carter Adams, claiming the B. J. Adams' estate was entitled to one-half of the enhanced value of Winnie Adams' separate property. The claim was based upon the theory that Mrs. Adams' separate estate had been enhanced by community funds and labor, therefore B. J. Adams was entitled to reimbursement under La.Civil Code art. 2408.[1],[2] [It is undisputed that the improvements placed upon the separate land of one spouse belong to the owner of the land. Fontenot v. Fontenot, 339 So.2d 897 (La.App. 3d Cir. 1976), writ denied 342 So.2d 217, 1977.] The trial judge found the value of the improvements to be $21,350.00 and awarded half of this amount to the succession of B. J. Adams. The Winnie Adams' succession has appealed.
Appellant contends the trial court erred in three instances. The first issue is whether or not the trial court erred in ruling that La.R.S. 13:3721 did not apply to the claim at hand and therefore allowed parol evidence to be admitted. The second issue is, assuming the propriety of the parol evidence, whether or not the judge erred in granting an award for the enhanced value of the property without first ascertaining its value at the commencement of the community. The third issue is whether or not the amount of the award was accurate.

APPLICABILITY OF THE "DEAD MAN'S STATUTE"
Appellant contends that because the suit for reimbursement was filed more than one *255 year after Winnie Adams' death, no parol evidence should have been admitted to prove the claim for reimbursement. The applicable statute is La.R.S. 13:3721 (commonly referred to as the "dead man's statute") which reads in part as follows:
"Parol evidence shall not be received to prove any debt or liability of a deceased person against his succession representative, heirs, or legatees when no suit to enforce it has been brought against the deceased prior to his death, unless within one year of the death of the deceased:"
The article then lists four particular actions, one of which must be taken within one year of the death of the deceased. There is no contention by the appellee that any one of these actions were taken. Winnie Carter died on May 11, 1977 and no formal claim was made until suit was filed on October 24, 1978, more than one year later.
In his written reasons for judgment the trial judge found La.R.S. 13:3721 was not applicable to this claim for reimbursement. We agree with the trial judge's conclusion that the purpose of the "dead man's statute" is to prevent fraudulent and stale claims which the deceased could have refuted if alive. Taylor v. Bocock, 276 So.2d 347 (La.App. 2d Cir. 1973), writ denied 279 So.2d 205, 1973; In Re Ford's Succession, 91 So.2d 71 (La.App. 1st Cir. 1956), writ denied 1957. The judge noted that the Third Circuit has explicitly held that the statute was limited to cases where a person was claiming a "debt" against the deceased party, and therefore had refused to apply the statute to a case involving a delictual obligation. Honeycutt v. Indiana Lumbermens Mutual Insurance Co., 130 So.2d 770 (La.App. 3d Cir. 1961), writ denied 1961.
The trial judge in the present case stated:
"In one sense, the claim against the Succession of Winnie Carter Adams is on a debt or obligation. Clearly, this Succession is obligated to the Succession of B. J. Adams for one-half of the increase or amelioration of Winnie Carter Adams' property brought about by the common labor, expense or industry during the community that existed between B. J. Adams and Winnie Carter Adams. But this debt is not based on a promise or a service or any other transaction of a contractual nature.
"It is an obligation established by law. Its very nature obviates the likelihood of fraud."
Indeed, a survey of the cases interpreting the "dead man's statute" reveals the cases unanimously deal with conventional obligations such as promises to pay fees for services, obligations to repay loans and commitments to make donations. None of the cases deal with a claim that arises by law, such as the claim for reimbursement under La.Civ.Code 2408.
Appellant heavily relies on the case of Alexander v. Bates, 206 So.2d 763 (La.App. 1st Cir. 1968) for the proposition that the parol should not have been allowed in the instant case. We agree with the trial judge's conclusion that although Alexander deals with a claim for reimbursement for improvements its facts make it totally inapplicable to the present situation. The defendant, Bates, was evicted from property claimed to be owned by the heirs of Alexander. As an alternative defense to the eviction suit, Bates claimed that Mr. Alexander had granted him permission to build a dwelling, therefore he was entitled to be reimbursed for the costs of the improvements. The court correctly ruled the "dead man's statute" prevented any parol evidence to show the deceased had consented to Bates' occupying the land. Obviously, the possibility of fraud was great in that the right to reimbursement hinged solely on the issue of whether or not Alexander had consented to Bates' building of the dwelling. In the present case there is no issue as to consent. Mr. Adams' right to reimbursement is not based upon Mrs. Adams' consent but is instead established by law. La. Civ.Code art. 2408.
Indeed, the parol evidence was not used to establish the existence of the debt or obligation, but only to establish the value and the extent of the claim. This same distinction was made in Succession of Bonnette, *256 188 La. 297, 176 So. 397 (La.1937), rehearing denied 1937. Bonnette dealt with the predecessor of La.R.S. 13:3721, Act. No. 11 of 1926, sec. 1. In Bonnette, a daughter sued the succession of her father, claiming her share of her predeceased mother's estate, of which the father had enjoyed the usufruct prior to his death. The court refused to apply the "dead man's statute" and allowed parol evidence to show the value of various improvements made on the property. The court pointed out that the right to be compensated for the improvements was a right that arose by law. The parol was being used merely to establish the value of those improvements.
For the foregoing reasons we agree with the trial judge's holding that La.R.S. 13:3721 is not applicable to the present case. No error was committed in allowing the parol evidence to be admitted.

ENHANCED VALUE OF THE SEPARATE PROPERTY
Appellant argues the trial judge erred in granting any award for the "enhanced value" of the separate property without first ascertaining its value at the beginning of the community. We agree.
In order to receive reimbursement under La.Civ.Code art. 2408 a plaintiff must prove the following things: (1) that the improvements did in fact enhance the property; (2) that the improvements were made with community funds or joint labor; (3) the value of the property at the beginning of the community and at the dissolution; and (4) that the enhancement did not result in the ordinary course of events. Fontenot v. Fontenot, supra. In his written reasons the trial judge stated that the estate of B. J. Adams failed to prove the improvements actually enhanced the land of Winnie Adams. The judge found the land had increased in value simply because of an increased demand and because of inflation. Therefore, the award of $10,675.00 was strictly based upon the value of the improvements only.
An appraiser's report was submitted by each side to the suit. Appellee's report contained an estimate of the value of the land only as of June 1957, an estimate of the land and improvements as of August 1975 and as of August 1977. Appellant's report contained an estimation of the value of the improvements only, as of December 1975. We find that neither report supplies enough information to accurately determine the enhanced value of the land and improvements.
Unfortunately, La.Civ.Code art. 2408 does not provide a formula for determining the enhancement value of the separate property. It is only logical that in order to determine the enhanced value of a piece of property it is essential to first determine the original value of that property. We feel it is impossible for the trial judge to conclude that the land has not been enhanced, or for him to assign any value to the "enhanced improvements" until the value of the land and the original improvements as of June 1957 are determined.
The appraisers' reports show the improvements consist of the following: a house and carport, a pump house, two barns, a workshop and storage area, a machinery storage area and chicken house, and a smoke house. Three ponds and field fencing were also listed as improvements by one appraiser. Virtually all of the buildings existed at the beginning of the community. It is unfair to fail to place a value on these buildings in that the estate of Mrs. Adams is due a "credit" for any value that the buildings had as of June 1957. There is testimony at trial indicating that much of the lumber from the original house was used to construct the new house. It was clearly erroneous for the court to assign a value for the replacement improvements without giving a value for the original improvements.
A survey of the applicable cases show there is no uniform approach to the evaluation problem, as each case is governed by its own peculiar facts. One popular method has been to determine the value of the separate property at the termination of the community, minus the value the property would have had if the improvements had *257 not been made. In Re Succession of Rusciana, 136 So.2d 509 (La.App. 1st Cir. 1961). This formula seems to work best in situations where there were no improvements at the beginning of the community. It is somewhat awkward to apply such a formula in the present situation where improvements were already on the land but have now been replaced.
A common sense approach to this problem would be to obtain an estimated value of the land and improvements as of the beginning of the community and compare that figure to the value of the land and improvements at the end of the community. The difference between the two, less the inflationary factor, would represent the enhanced value of the separate property.

ACCURACY OF THE AWARD
Appellant's third assigned error is that the judge's award was inaccurate because of conflicting testimony concerning the value of several ponds on the land and because of the judge's failure to grant a credit to Mrs. Adams' estate for certain separate funds expended on behalf of the community.
We need not determine the correctness of the value of the ponds because the trial judge's award has been set aside and a new award will be determined consistent with this opinion. We simply note the ponds should be treated as any other improvement. If the evidence shows they were constructed (or improved) during the community and they enhanced the value of the land, the appropriate amount due will be reflected as part of the total figure.
Appellant further contends the trial court should have granted Mrs. Adams' estate a credit of $1,750.00. At trial, two checks of $875.00 each were introduced into evidence. Floyd Carter, Mrs. Adams' brother testified the checks were written by him and Mrs. Carter in exchange for certain property sold by Mrs. Adams. Mr. Carter stated the property Mrs. Adams sold was "part of my daddy's property, heir property." Another witness, Mrs. Kathy Johnson, stated she was aware of the fact that Mrs. Adams had sold some of her inherited property and had used the money to buy various household items. Appellant contends that since this separate property was used to enhance the community, Mrs. Adams' estate is entitled to be reimbursed for the full amount. Of course, the proper amount of the award would be only one half of this amount, or $875.00, since Mrs. Adams would have theoretically received one half of its benefit from the community.[3]
We find that this claim has not been sufficiently proven. First, there is no evidence as to what particular property was sold nor as to what Mrs. Adams did with the funds. She could have used the funds for the benefit of her separate estate, in which case no reimbursement would be due. Second, in order to prove a prima facie case for restitution of separate property used for the benefit of the community the wife must prove receipt of the funds by the husband. (Once this receipt is shown she need not show what was done with the funds.) Huie, Separate Claims to Reimbursement From Community Property in Louisiana, 27 Tulane Law Review 143 (1953).
For the foregoing reasons, the judgment in Docket No. 13,656 as it pertains to the award of $10,675.00 for the enhancement of separate property is set aside and this case is remanded for further proceedings to determine the value of the land and improvements as of June 1957. Further proof of the claim for reimbursement for separate funds which benefitted the community should also be developed. Costs of these proceedings should be shared equally by the parties.
REMANDED.
NOTES
[1] La.Civ.Code art. 2408 reads as follows: "When the separate property of either the husband or the wife has been increased or improved during the marriage, the other spouse, or his or her heirs, shall be entitled to the reward of one-half of the value of the increase or ameliorations, if it be proved that the increase or ameliorations be the result of the common labor, expenses or industry; but there shall be no reward due, if it be proved that the increase is due only to the ordinary course of things, to the rise in the value of property, or to the chances of trade."
[2] Art. 2408 was repealed in 1980 by the revision of the matrimonial regimes law. (La.Civ. Code art. 2325, et seq.) This concept is carried forth in the new law, art. 2367.
[3] This right to reimbursement has now been specifically provided for in the new matrimonial regime law, La.Civ.Code art. 2367.