JAMES F. McKAY III, Judge.
|1Prior to 1950, Mary Jacobs Sintes (Mary) and her husband, Mike Sintes, owned and operated a boat rental and bait business called “Mike’s Place” that sat along Lake Catherine on property leased from the railroad. Mike Sintes died in 1950 and Mary became the owner of an undivided one-half interest in the business and usufructuary over the remaining one-half interest. On December 10, 1951, Mary became the full owner of “Mike’s Place” when she purchased her stepchildren’s one-half interest in the business.
On March 30, 1951, Leon Riche, Sr. (Leon) purchased a piece of land in the Rigolets area near “Mike’s Place”. At roughly the same time, Leon began working for Mary at “Mike’s Place”. Leon gradually made improvements to his land and at some point Mary moved the structure of “Mike’s Place” off of the property owned by the railroad and onto the property owned by Leon. On April 22,1952, Mary and Leon married and Mary changed her name to Mary Jacobs Riche. Sometime thereafter, the business’s name changed from “Mike’s Place” to “Lee’s Place”. |2There is no evidence that Leon and Mary ever entered into any formal partnership agreement.
Over the course of the operation of “Lee’s Place”, Leon and Mary filed joint income tax returns, on which only Leon reported self-employment income. The occupational licenses relative to “Lee’s Place” for the years 1960-1964 and 1987 were all issued to Leon alone. Leon also never transferred or tried to transfer his land to Mary, to the marital community, or to any informal business partnership.
On November 1, 1993, Leon executed a last will and testament in which he “bequeath[ed] the usufruct to terminate upon remarriage over all of the property of every nature and description both separate and community that I own at my death to Mary. Leon bequeathed “the naked ownership of all of the property of every nature and description ... to Audrey Ann Riche Mizell and Leon Riche, Jr.” On that same date, Mary also executed her last will and testament in which she “bequeath[ed] the usufruct to terminate upon remarriage over all of the property of every nature and description both separate and community that I own at my death” to Leon. Mary bequeathed “the naked ownership of all of the property of every nature and description’ to particularly designated legatees.
Leon died on March 27, 1995, leaving Mary as his surviving spouse and the usu-fructuary of his succession. Pursuant to that role, Mary listed ownership of one-half of Leon’s separate land on the sworn descriptive list filed in Leon’s succession. The court placed Mary in possession of the property. Mary died on April 30, 2001. On April 24, 2002, Leon’s heirs and legatees filed a proof of claim |3asserting full ownership of Leon’s land. On September 23, 2003, Mary’s succession filed a lawsuit contending that Leon breached some fiduciary obligation to Mary by claiming full ownership of the land and asking that the land be recognized as owned by a partnership purportedly formed by Mary and Leon.
After a bench trial on the merits, the trial court issued its judgment on March 14, 2007. The court found that although Mary and Leon enjoyed a business relationship exhibiting characteristics of a partnership, neither Mary nor Leon initiated the necessary steps to transfer Leon’s land into the partnership. Based upon these findings, the trial court ordered that Mary’s succession does not own the land or any of its improvements, and further ordered that Leon’s heirs and legatees owe Mary’s succession five thousand *898 dollars for improvements placed upon the land. Finally the court ordered that insurance proceeds received as a result of property damage caused by Hurricane Katrina are payable to Leon’s heirs and legatees. It is from this judgment that Mary’s succession now appeals.
On appeal, there are essentially two issues before this Court. The first is whether the trial court erred in finding that the immovable property located near the Rigo-lets was the separate property of Leon. The second is whether the trial court erred by not finding that Leon had breached some sort of duty by not transferring his separate property to his and Mary’s community or a partnership that purportedly existed between them.
In the instant case, Leon purchased the land before he married Mary. As such, the land was already his separate property at the time he and Mary were | parried.[1] Although Mary moved the structure of “Mike’s Place” to Leon’s property, there is no indication that there was any attempt, formal or otherwise to transfer ownership or change the nature of the Rigolets property. Both former Civil Code Article 2275 and Civil Code Article 1839 make it clear that a transfer of immovable property must be in writing unless there is an oral transfer and the transferor recognizes the transfer “when interrogated on oath.” In the instant case, neither of these conditions can be met. Therefore, the Rigolets land cannot be community property, nor can it be owned by a purported partnership between Leon and Mary. Accordingly, we find no error in the trial court’s finding that the Rigolets property and any insurance proceeds from Hurricane Katrina belonged to Leon’s heirs and legatees. We also find no error in the trial court’s finding that Mary’s succession was entitled to a reimbursement of $5,000.00 for improvements made to the land.
Mary’s succession contends that Leon breached some sort of fiduciary duty to a purported partnership between Leon and Mary because he did not transfer the Rigolets property to the partnership.
According to Article 2801 of the Louisiana Civil Code of 1870, a “[p]artnership is a synallagmatic and commutative contract made between two or more persons for the mutual participation in the profits which may accrue from property, credit, skill or industry, furnished in determined proportions by the parties.” Current Article 2801 defines a partnership as “a juridical person, distinct |5from its partners, created by a contract between two or more persons to combine their efforts or resources in determined proportions and to collaborate at mutual risk for their common profit or commercial benefit.”
At the time Leon and Mary’s partnership was allegedly formed, a partnership could be “made by all persons capable of contracting.” La. C.C. art. 2801. Additionally, at that time, “[p]artnerships [were] divided, as to their object, into commercial and ordinary partnerships.” Id. Ordinary partnerships were further “divided into universal and particular partnerships.” La. C.C. art. 2826. Universal partnerships could “not be created without a writing signed by the parties, and registered” in the manner prescribed by law. La. C.C. art. 2834. With respect to particular partnerships, the Louisiana Civil Code of 1870 provided “[i]f any part of the stock of this partnership consist of real estate, it must be in writing, and made according to *899 the rules prescribed for the conveyance of real estate!.]” La. C.C. art. 2836.
Although it is true that Mary and Leon enjoyed a business relationship exhibiting characteristics of a partnership, neither Mary nor Leon initiated the necessary steps to transfer Leon’s land into the partnership. There is no signed agreement indicating that any type of partnership agreement was executed, nor is there any appreciable evidence that any informal oral partnership was formed. Because neither Leon nor Mary is alive to testify as to the existence of a partnership, the allegations of a partnership are supported only by second hand parole evidence. In the instant case, it simply cannot be proven that a partnership |6between Leon and Mary was ever formed. Accordingly, the appellants cannot show that Leon owed a duty to or breached a duty to the alleged partnership.
For the foregoing reasons, we affirm the trial court’s judgment.
AFFIRMED.

. In Fontenot v. Fontenot, 339 So.2d 897 (La.App. 3 Cir.1976), the court held that a “community of acquets and gains cannot exist without a marriage, and any property acquired prior thereto must necessarily be of a paraphernal nature."