| SUCCESSION OF ELIZABETH SMITH FOSTER | * | NO. 2019-CA-0209 |
|---|---|---|
| | * | |
| | | COURT OF APPEAL |
| | * | |
| | | FOURTH CIRCUIT |
| | * | |
| | | STATE OF LOUISIANA |

* * * * * * *

APPEAL FROM
CIVIL DISTRICT COURT, ORLEANS PARISH
NO. 2014-08855, DIVISION "A"
Honorable Ellen M Hazeur, Judge
* * * * * *
**Judge Rosemary Ledet**
* * * * * *
(Court composed of Judge Daniel L. Dysart, Judge Rosemary Ledet, Judge Tiffany G. Chase)

John A. E. Davidson
Christopher J. Davidson
DAVIDSON & DAVIDSON, APLC
2901 Independence Street
Suite 201
Metairie, LA 70006

     COUNSEL FOR PLAINTIFFS/APPELLANTS

C. Hunter King
THE KING LAW FIRM
2245 Virginia Street
Baton Rouge, LA 70802

     COUNSEL FOR DEFENDANT/APPELLEE

     **AFFIRMED**

*JULY 31, 2019*

This is a succession case. Dona Foster Zeno opened the succession of her mother, Elizabeth Smith Foster, by filing a petition attaching Mrs. Foster's notarial testament. The trial court rendered a judgment ordering that the testament be filed and executed according to its terms. From that judgment, Ms. Zeno's brothers—Etheridge Foster, Larry Foster, and Melvin Foster (collectively the "Foster Brothers")—appeal. For the reasons that follow, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Before her death, Mrs. Foster was married twice. First, she was married to Clay Williams. Of that marriage, two children were born—Fay Tubman[1] and Artis Atkins. Second, she was married to Charles Foster, Sr. Of that marriage, five children were born—Ms. Zeno, the Foster Brothers, and Charles Foster, Jr.[2] Ms. Zeno has two children—Meleka King Pierce and Alvin King.

On August 4, 1998, Mrs. Foster executed a notarial testament. The testament disposed of Mrs. Foster's estate as follows:

> I give and bequeath to my daughter, Donna Foster [Zeno], as a special legacy, my entire estate, including my home located at 413,

---

[1] Ms. Tubman is deceased.

[2] Both Charles Foster, Sr., and Charles Foster, Jr., are deceased.

1

415 State Street and the real estate on which the home is situated, along with all furniture and fixtures and any other assets that I might own at the time of my death, on the sole condition that she allow Fay Tubman, Artis Atkins and Meleka King to live at 415 State Street so long as they may choose to do so.

In the event that my daughter, Donna Foster [Zeno], should decide not to accept this condition, then I give and bequeath to my children. Fay Tubman, Artis Atkins and Donna Foster [Zeno] and to my grandchildren, Alvin King and Meleka King [Pierce], in equal portions, the full ownership of my entire estate.

On October 2, 2013, Mrs. Foster died. On September 9, 2014, Ms. Zeno opened Mrs. Foster's succession by filing a petition. Attached to the petition was a document purporting to be Mrs. Foster's notarial testament. The trial court ordered that the testament be filed and executed according to its terms and rendered judgment placing Ms. Zeno in possession of Mrs. Foster's estate.[3]

The Foster Brothers filed a petition to annul the judgment, asserting that the testament was not in original form and was, thus, presumed revoked; that Ms. Zeno had not rebutted the presumption of revocation; and, in the alternative, that the terms of the testament were invalid as a matter of law. In response, Ms. Zeno conceded that the testament attached to the petition was not in original form, but she contended that the trial court's judgment was nonetheless valid.

The trial court found that the document attached to Ms. Zeno's petition was not Mrs. Foster's original testament and that, thus, for the judgment to be valid, La. C.C.P. art. 2854 required that a notary conduct a search for the original.[4] Because

---

[3] *See* La. C.C.P. art 2891 (providing that "[a] notarial testament, a nuncupative testament by public act, and a statutory testament do not need to be proved. Upon production of the testament, the court shall order it filed and executed and this order shall have the effect of probate").

[4] La. C.C.P. art. 2854 provides, in relevant part, that "[i]f the testament is not in the possession of the petitioner, he shall pray that the court direct that a search be made for the testament by a notary of the parish."

this had not been done, the trial court, pursuant to La. C.C.P. arts 1971[5] and 1972,[6]
annulled its prior judgment and ordered a trial.[7]

After the trial, on January 2, 2019, the trial court rendered judgment in favor
of Ms. Zeno and against the Foster Brothers. In its judgment, the trial court made
the following findings:

> After further review of the pleadings and the testimony offered
> at the hearing, the Court finds that a copy of the statutory testament
> offered by Donna Foster Zeno should be permitted to be filed into the
> record of these proceedings, the Court finding that the said document
> is a valid copy of the last will and testament of Elizabeth Smith Foster
> . . . . The evidence does not support that the decedent had either
> revoked or destroyed the original of her testament prior to her death.
> Further, the Court is satisfied, based on its review of the pleadings and
> testimony, that, the "Statutory Will" captures and otherwise, expresses
> the decedent's testamentary intent.
>
> The Court finds that the provisions of the will concerning
> ownership of the property located at 413,415 State Street to be valid
> and enforceable. The first provision grants ownership of the property
> to Donna Foster Zeno subject to a use as a domicile by Ms. Zeno's
> half-sisters, Fay Tubman and Artis Atkins, and Ms. Zeno's daughter,
> Meleka King as long as they choose to reside there. The Court finds
> that the decedent's testamentary intent was to create a usufruct in
> favor of Fay Tubman, Artis Atkins and Meleka King with the naked
> ownership of the property in favor of Donna Foster Zeno. Thus, the
> enjoyment of the property by Fay Tubman, Artis Atkins and Meleka
> King, by the terms of the testament, necessarily ends at the earlier of
> their individual decisions not to use the home or upon their deaths.

---

[5] La. C.C.P. art. 1971 provides, in relevant part, that "[a] new trial may be granted, upon
contradictory motion of any party or by the court on its own motion, to all or any of the parties
and on all or part of the issues, or for reargument only."

[6] La. C.C.P. art. 1972 provides, in relevant part, that "[a] new trial shall be granted, upon
contradictory motion of any party, . . . [w]hen the verdict or judgment appears clearly contrary to
the law and the evidence."

[7] *See* La. C.C.P. art. 2901 (providing, in relevant part, that "[i]f an objection is made to the ex
parte probate of a testament, . . . the testament may be probated only at a contradictory trial of
the matter"). The trial court also appointed a notary to conduct a search for Mrs. Foster's original
will. Pursuant to that order, the notary conducted a search and entered into the record a notice of
evidence testifying that the notary had conducted a search of Mrs. Foster's residence but was
unable to locate Mrs. Foster's original will.

Accordingly, the trial court ordered that the testament be filed and executed according to its terms. This appeal followed.

**DISCUSSION**

This case presents essentially two issues: whether Ms. Zeno rebutted the presumption of revocation; and whether the terms of the testament are valid. We address each issue separately.

*Presumption of Revocation*

It is uncontested that Mrs. Foster's original testament cannot be located and that the document attached to the petition is a copy. "[T]he failure to find a will which was duly executed and in the possession of, or readily accessible to, the testator, gives rise to a legal presumption of revocation by destruction . . . ." *Succession of Talbot*, 530 So.2d 1132, 1134-35 (La. 1988). The presumption also arises when a copy of the testament exists but the original cannot be located. *Id.*

The presumption is rebuttable, however, "and so may be overcome by sufficient evidence." *Id.* As a general matter, the presumption "may be rebutted by clear proof (1) that the testator made a valid will; (2) of the contents or substantiality of the will; and (3) that the will was not revoked by the testator." *Succession of Dalier*, 09-0393, p. 3 (La. App. 4 Cir. 8/12/09), 19 So.3d 8, 10 (quotation marks omitted) (citing *Succession of Claiborne*, 99-2415, p. 3 (La. App. 1 Cir. 11/3/00), 769 So.2d 1267, 1268 (in turn citing *Succession of Nunley*, 224 La. 251, 69 So.2d 33, 35 (1953)))).

In this case, the first two requirements are met. As noted, it is uncontested—indeed, the testimony at trial established—that Mrs. Foster executed a valid

4

notarial testament on August 4, 1998[8] and that the document attached to the petition is a copy of that testament.

Regarding the third requirement—proof that the testament was not revoked by the testator—it has been observed that "[c]lear and convincing proof that a person other than the testator destroyed the will without the direction, consent or permission of the testator would be sufficient to overcome the presumption that the testator revoked the will by destroying it." *Succession of Doucet*, 42,963, p. 7 (La. App. 2 Cir. 2/6/08), 975 So.2d 738, 741-42 (citing *Succession of Bagwell*, 415 So.2d 238 (La. App. 2d Cir. 1982)). Moreover, the jurisprudence has "recognized a sliding scale of proof sufficient to rebut the presumption depending on the

---

[8] At the time, the requirements of a notarial testament for a testator who was able to read and write were as follows:

> The notarial testament shall be prepared in writing and shall be dated and executed in the following manner. If the testator knows how to sign his name and to read, and is physically able to do both, then:
>
> > (1) In the presence of the notary and two competent witnesses, the testator shall declare or signify to them that the instrument is his testament and shall sign his name at the end of the testament and on each other separate page.
> >
> > (2) In the presence of the testator and each other, the notary and the witnesses shall sign the following declaration, or one substantially similar: "In our presence the testator has declared or signified that this instrument is his testament and has signed it at the end and on each other separate page, and in the presence of the testator and each other we have hereunto subscribed our names this ____day of _____, ____."

La. C.C. art. 1577 (added by Acts 1997, No. 1421, § 1, eff. July 1, 1999); *see also* La. C.C. art. 1577, cmt. (a) (noting that "[t]his article reproduces the substance of R.S. 9:2442," which was repealed when La. C.C. art. 1577 was enacted, and, thus, "d[id] not change the law"). The will attached to the petition is in writing; attests that Mrs. Foster was able to read and write; is signed and dated on each page; and bears the signatures of a notary and two witnesses, all of whom declared as follows:

> The Testator has signed this will consisting of two pages at the end and on each separate page, and has declared or signified in our presence that it is her last will and testament, and in the presence of the testator and each other we have hereunto [subscribed] our names this 4th day of August, 1998 in Metairie, Louisiana.

Thus, the testament is in valid notarial form.

weakness or strength of the evidence surrounding the lost original." *Succession of Altazan*, 96-0409, pp. 4-5 (La. App. 1 Cir. 11/8/96), 682 So.2d 1320, 1322. In *Talbot*, the Supreme Court articulated the factors governing the strength of the presumption as follows:

> The presumption may be weak or strong, and more or less easily rebuttable, depending on the clarity of the evidence as to whether the testator was the author of the will's destruction, whether he expressed an intention to revoke the will, whether he had access to other originals of the will prior to his death, whether he treated any ext[a]nt copy of the will as not having been revoked, and as to any other issue bearing upon the testator's intention with respect to the destruction and revocation of the will.

530 So.2d. at 1135. A trial court's determination as to whether the presumption of revocation has been rebutted is reviewed under the manifest error-clearly erroneous standard of review. *See Succession of Beard*, 483 So.2d 1228, 1230 (La. App. 4th Cir. 1986); *see also Succession of Doucet*, 42,963, p. 7 (La. App. 2 Cir. 2/6/08), 975 So.2d 738, 742 (observing that "[t]he district court's findings of fact regarding the presumed revocation of a will by destruction are subject to manifest error review").

In this case, the presumption of revocation is weak. There is no evidence that Mrs. Foster was the author of the testament's destruction, that she ever expressed an intention to revoke the testament, or that she ever treated any copy of the testament as having been revoked.

To the contrary, Ms. Zeno offered considerable evidence that Mrs. Foster did not revoke her testament. The testimony at trial established that Mrs. Foster's testament was destroyed as a result of water damage caused by Hurricane Katrina—that is, without her "direction, consent or permission." The evidence further established that, in addition to the copy of the testament in Mrs. Foster's

6

possession, the attorney who drafted the testament retained in his records either the original or a copy of the testament;[9] that Hurricane Katrina also destroyed the testament in her attorney's possession; and that Mrs. Foster's attorney did not inform Mrs. Foster of the destruction of the testament in his possession. Thus, from Hurricane Katrina to her death in 2013, Mrs. Foster reasonably could have believed that, notwithstanding the inadvertent destruction of the testament in her possession, her attorney still retained at least a copy, if not the original testament.

In opposition to this evidence, the Foster Brothers offered photographs and expert testimony purporting to establish that the roof of Mrs. Foster's home was not damaged by Hurricane Katrina. Ms. Zeno's counsel, however, established that siding was missing from the back of the home—where the closet in which Mrs. Foster stored her testament was located—and that, notwithstanding the condition of the roof and because of the overall condition of the home, rainwater "could possibly [have been] diverted into the house."

In light of the evidence offered in this case and the weakness of the presumption, we cannot say the trial court's finding that Ms. Zeno rebutted the presumption of revocation was manifestly erroneous. We next consider the issue of which terms of Mrs. Foster's testament, if any, control the disposition of her estate.

### Terms of the Testament

"The intent of the testator controls the interpretation of his testament." La. C.C. art. 1611. Thus, it has been observed that "[t]he intent of the testator is the

---

[9] The attorney who drafted Mrs. Foster's will testified at trial that he could not remember whether the will in his possession was the original, a duplicate original, or merely a copy; he also testified, however, that his "customary practice would have been to keep an original [and] give an original to the client."

7

paramount consideration in determining the provisions of a will." *Succession of Williams*, 608 So.2d 973, 975 (La. 1992).

"If the language of a testament is unambiguous, its letter is not to be disregarded under the pretext of pursuing its spirit;" and "rules for interpretation apply only when the testator's intent cannot be ascertained from the language of the testament." La. C.C. art. 1611. "Language is ambiguous when it can be reasonably interpreted to mean different things." *Succession of Theriot*, 16-639, pp. 8-9 (La. App. 3 Cir. 5/17/17), 221 So.3d 862, 868-69 (quoting *Adams v. Willis*, 00-589 p. 5 (La. App. 3 Cir. 11/2/00), 777 So.2d 5, 9) (quotation marks omitted). The determination of whether language is ambiguous is a question of law. *Louisiana Ins. Guar. Ass'n v. Interstate Fire & Cas. Co.*, 93-911 (La. 1/4/94), 630 So.2d 759, 764. Questions of law are reviewed under a *de novo* standard of review. *Succession of Harlan*, 17-1132, p. 5 (La. 5/1/18), 250 So.3d 220, 223.

In this case, the trial court determined that the language of Mrs. Foster's testament "captures and otherwise[] expresses the decedent's testamentary intent." That intent, the trial court determined, "was to create a usufruct in favor of [Ms.] Tubman, [Ms.] Atkins and [Ms. Pierce] with the naked ownership of the property in favor of [Ms.] Zeno." We agree.[10]

---

[10] The Foster Brothers suggest that Mrs. Foster's omission of the word "usufruct" from her testament renders the testament ambiguous. We disagree for two reasons. First, it is well-settled that the failure to use the word "usufruct" (or, for that matter, "use," "use and benefit," or "enjoyment") "is not fatal to the validity of [a] bequest as a usufruct." *Succession of Moran*, 479 So.2d 350, 352 (La. 1985) (citing *Succession of Goode*, 425 So. 2d 673, 681 (La. 1982)). "What is required is a manifestation of the will of the testator to confer less than full ownership to the legatee." *Id.* The language of Mrs. Foster's testament unambiguously manifests her intent to confer use of the home on Ms. Tubman, Ms. Atkins, and Ms. Pierce and to confer naked ownership of the home on Ms. Zeno. Second, the Civil Code requires that "[a] disposition should be interpreted in a sense in which it can have effect, rather than one in which it can have none." La. C.C. art. 1612. The Foster Brothers concede that, if the testament is read as not conferring a usufruct, "[w]e are left with an undefined interest in real property" and that "[o]ur law does not support [the]creation of novel interests in real property." Accordingly, the Foster Brothers' construction, which would render the disposition without effect, must yield to the trial court's construction.

The Foster Brothers concede that "granting a usufruct or right of habitation to [Ms. Tubman, Ms. Atkins, and Ms. Pierce]" would be "[a] lawful disposition,"[11] They contend, however, that Ms. Zeno's right to accept naked ownership of the home subject to the usufruct or to reject the legacy, thereby triggering operation of the alternative legacy, constitutes a testamentary disposition committed to the choice of a third person, in violation of La. C.C. art. 1572.[12]

Ms. Zeno, however, is not a third person—she is an heir. *See generally Derouen v. Derouen*, 03-623 (La. App. 3 Cir. 1/28/04), 865 So.2d 940 (discussing in detail the history of and jurisprudence interpreting La. C.C. art. 1572; observing that there is "no jurisprudence that directly addresses . . . whether under Article 1572, an heir and/or particular legatee is a 'third person' to whom a testamentary disposition is committed"; and concluding that an heir is "not a third party to the will and that Article 1572 is [thus] not applicable"); *see also Fontenot v. Fontenot*, 339 So.2d 897, 903, n. 1 (La. App. 3rd Cir. 1976) (observing that "generally speaking, legal heirs are not regarded as third persons in the law"). Mrs. Foster's testament confers on Ms. Zeno, as an heir, no greater authority than is conferred on any heir—the choice either to accept or reject a legacy. Such a choice does not violate La. C.C. art. 1572.

## DECREE

For the foregoing reasons, the trial court's judgment is affirmed.

**AFFIRMED**

---

[11] *See* La. C.C. art. 1522 (providing that "[a] disposition *inter vivos* or *mortis causa* by which the usufruct is given to one person and the naked ownership to another is not a prohibited substitution").

[12] La. C.C. art. 1572 (provides, in relevant part, that "[t]estamentary dispositions committed to the choice of a third person are null, except as expressly provided by law."

9